John COLLINS, Plaintiff (Appellant),

v.

Jackson COWGER, Defendant (Respondent).

No. 44610.

Supreme Court of Missouri, Division No. 1.

Nov. 14, 1955.

Lusser & Dorsey, Rene J. Lusser, Gerard M. Dorsey, St. Louis, for appellant.

F. X. Cleary, C. M. Kirkham, Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for respondent.

VAN OSDOL, Commissioner.

In this action for $15,000 for personal injuries sustained when the motor vehicles of plaintiff and defendant collided in the intersection of Grand Avenue and Lindell Boulevard in St. Louis, a jury returned a verdict for defendant, and plaintiff has appealed from the judgment entered.

Herein plaintiff-appellant's contentions are of errors of the trial court in ruling on plaintiff's objections to the argument of defendant's counsel. Plaintiff-appellant asserts the trial court erred in permitting defendant's counsel, in argument, to make highly prejudicial, inflammatory statements, and in failing to appropriately rule on plaintiff's objections and motions to exclude or direct the jury to disregard the statements. In ruling these contentions we find it necessary to state generally the issue of negligence of defendant as submitted to the jury; to set out particularly much of the evidence tending to support and refute plaintiff's claim; and to quote colloquies occurring during the progress of the trial and during argument of counsel.

As stated, the motor vehicles collided in the intersection of Grand Avenue, a north-south street, and Lindell Boulevard, an east-west street. There are electric traffic control signal devices at the four corners of the intersection by which the display of a green light indicates "go," and a red light indicates "stop." The east side of the Melbourne Hotel building extends along the west side of Grand from the north-west corner of the intersection to an alley approximately one hundred fifty feet north of the intersection. Plaintiff, driving a 1950 Plymouth, had been moving north-wardly on Grand; and defendant, also driving a 1950 Plymouth, had been moving westwardly on Lindell. The vehicles collided in or near the northeast corner of the intersection.

Plaintiff's principal instruction submitted negligence of defendant in operating his vehicle westwardly into the intersection when the traffic control device signaled "stop" to east-west traffic on Lindell. The real factual issue developed in the trial was —which of the parties, plaintiff or defendant, when he drove into the intersection, was driving "against" the signals as then displayed for traffic control.

Plaintiff testified that, having visited restaurants and taverns of two friends on a New Year's Eve, December 31, 1952, he was driving home at eleven-fifteen in the evening. He had turned north on Grand at Pine Street, one block south of Lindell, and, driving northwardly with the wheels of his car straddling the east rail of the east (northbound) streetcar track on Grand, had approached and driven into the intersection of Grand and Lindell at fifteen to twenty miles per hour. He had seen two automobiles standing headed west and practically abreast on Lindell east of Grand awaiting a time for movement westwardly across the intersection. The southernmost of these automobiles was almost in the center of Lindell. When plaintiff had been fifty feet south of Lindell he had seen a green light displayed by the traffic control device at the northeast corner of the intersection. He again observed the green light just "about when I entered Lindell." As the front of plaintiff's automobile was "just passing" the north curb line of Lindell, the front of defendant's vehicle struck the right rear fender and wheel of plaintiff's car. Plaintiff had not been aware of the approach of defendant's vehicle until it was "about ten feet away from me." Plaintiff said his automobile was turned over on its left side; it then turned back up on its wheels again and came to rest headed north forty or fifty feet north of Lindell; his automobile was "practically, still in the northbound streetcar tracks." (A policeman, witness for plaintiff, said plaintiff's vehicle came to rest facing north on the west [southbound] streetcar track after it had "turned around a couple of times." Another officer, witness for plaintiff, said he observed plaintiff's automobile had come to a stop in the middle of Grand "just about at the mouth of the alley between Lindell and Olive." This point is a half block north of the intersection of Lindell and Grand.)

Defendant testified that he, driving westwardly on Lindell, had been moving fifteen miles per hour. When he was five or six car lengths away from Grand, the traffic signal changed from red to green giving the "go" signal for east-west traffic. At the time there were three or four cars on Lindell headed west "parked there waiting" for the traffic change. They were on his right. Defendant, having looked to his left and then to his right and having observed no traffic, moved on into the intersection increasing his speed to twenty or twenty-five miles per hour. He was driving his car in the lane which is next to the white line in the center of the street. He had not seen plaintiff's automobile until just "about the time we hit." He had no idea as to the speed plaintiff's automobile was moving. After the collision defendant's automobile was four or five feet north of the center of the intersection. It had come to a stop at the point of collision, except that it "was moved three or four feet to the north." Defendant also testified that plaintiff's automobile came to rest headed north over on the west side of Grand just north of the Melbourne Hotel.

In his opening statement, plaintiff's counsel told the jury that a colored doorman, with duties at the main entrance of the Melbourne Hotel, would testify as to stated relevant facts. Plaintiff rested his case without putting the doorman, one James B. Miller, on the witness stand; and defendant's counsel said, "Before Plaintiff closes his case I would like to ask the plaintiff one or two other questions, as requested yesterday." Plaintiff, being recalled to the witness stand, testified, in response to questions by defendant's counsel, that he (plaintiff) had seen a colored man dressed in the uniform of the Melbourne Hotel in the courtroom that morning and during most of the preceding afternoon, although "he is not in the courtroom (now)." At the conclusion of this interrogation of plaintiff, the trial judge was about to declare a recess, whereupon the following conversation occurred between counsel,

"Mr. Lusser (counsel for plaintiff): I may want to take the stand. Why did you ask this question?

"Mr. Cleary (counsel for defendant): I may want to argue that matter.

"Mr. Lusser: I will take the stand for a moment before I close my case.

"Mr. Cleary: You are not going to put in any hearsay testimony. What kind of testimony are you going to give? I would like to discuss that point in your Honor's chambers out of the hearing of the jury."

And, during the recess, there was the following colloquy in the judge's chambers, out of the presence and hearing of the jury,

"Mr. Cleary: I would like the record to show that immediately before the recess * * * Mr. Lusser indicated to the court that he might want to take the stand to testify, reopen his case. We have no objection to his reopening the case, but it is my understanding * * * if he takes the stand it will be for the purpose of explaining why he didn't put this colored witness on the stand who is a Melbourne Hotel employee. Now, such an explanation would be pure hearsay and it is not admissible. The best evidence would be the witness himself. The record shows here that the man was in court two days and then this morning disappeared from the courtroom. The presumption is he was told to leave. Any explanation as to why would be hearsay on the part of Mr. Lusser or any other witness.

"I am asking the Court to rule now rather than compel me to make such objection when Mr. Lusser takes the stand and attempts to make that explanation.

"The Court: Well, of course, I can hardly anticipate what Mr. Lusser would testify to.

"Mr. Cleary: I would like to ask Mr. Lusser what he wants to testify to.

"Mr. Lusser: O.K. I think it is a moot situation, anyway, Judge, because on the basis of what he (Mr. Cleary) did I now am bringing the colored man in.

"Mr. Cleary: That's all right.

"Mr. Lusser: So I can explain to the court, my understanding is they talked to him (the doorman) yesterday and that a good part of his testimony is predicated upon what someone who drove up in front of the Melbourne said to him, rather than on his own personal observation, but I would just as soon have him come in court now and testify to what he knows and then let Mr. Cleary object to what may be objectionable.

"The Court: Do you want to bring him in?

"Mr. Lusser: Yes. We have already, we are having someone go out there and pick him up. This thing would have been a closed issue, but since you (Mr. Cleary) raised it you force my hand.

"Mr. Cleary: I had to get it in the record. It wasn't in the record. A man walking in and out of the courtroom does not appear in the record of the case. I had to get it in there in order to have some basis to argue that. That is my sole purpose in doing it. I wanted to draw an unfavorable inference—a favorable one to us and unfavorable as to plaintiff. That is the reason I did that. In order to do that I had to get something in the record. * * *"

Subsequently, in the course of the trial (out of turn, but with consent of defendant's counsel and the trial court), plaintiff called the witness Miller, who testified that he saw an automobile come westwardly on Lindell and cross the intersection at Grand. When the automobile had come across the intersection, it had moved with the "green" signal for east-west traffic. The automobile (driven by some person intending to become a guest at the hotel) stopped sixty feet west of the hotel entrance. When the witness had "just got" to the automobile, he heard the "crash" of the collision of plaintiff's and defendant's cars. He turned around to look and the traffic was "north and south."

Turning now to the argument of defendant's counsel—Mr. Cleary was urging that "here we have two parties to this lawsuit. I say the two police officers add little, if anything, to what actually occurred. I say the same is true of Mr. Miller. Incidentally, you never would have heard from Mr. Miller if I hadn't put the plaintiff on the stand." Mr. Lusser objected "as going beyond the record in this case." The objection was overruled. Mr. Cleary continued, "I say this—and there is no question about this transpiring during this trial—the plaintiff, through his lawyer, got up here and made the solemn announcement that the 'plaintiff rests,' which means the plaintiff closes his case, and at that stage of the proceeding the plaintiff has no further right to put on any evidence. * * * I then asked leave to recall this plaintiff and ask him another question. Mr. Collins

took the stand and I asked him about Mr. Miller who was here yesterday afternoon and again this morning. I knew that if Mr. Miller had to testify here he would tell the truth of what he knew. I knew that he was sent away from the courtroom because the plaintiff didn't want to put him on the stand.

"Mr. Lusser: If the Court please, I object to that and I ask counsel be reprimanded for that highly prejudicial, unfair and contemptible statement on his part.

"The Court: Well, the jury has seen what occurred. I guess you draw your inferences and Mr. Cleary draws his. Objection overruled.

"Mr. Lusser: There is no evidence whatsoever on that. At this time I would like to have a ruling on my request for an instruction to the jury to disregard that point and to reprimand counsel.

"The Court: Overruled.

"Mr. Lusser: Then I further ask the Court that a mistrial be declared because of the prejudicial conduct of counsel in this case.

"The Court: Overruled on that."

Defendant's counsel also urged in this argument, "No, we didn't see the man (plaintiff), a man shooting into the intersection at high speed." Again counsel urged, "I say it (plaintiff's automobile) was traveling at excessively high rate of speed." An objection on the stated ground that there was "absolutely no evidence of high speed" was overruled.

Defendant's counsel also argued, "Here is a man (plaintiff) who was out, I assume, on pleasure that night. I am not criticising him; he had a right to be out, but I don't think you can draw an unfavorable inference against my client, a man who was working and working hard to make a living; even working on New Year's Eve. He doesn't have a mysterious occupation where everybody around Grand and Olive knows him.

"Mr. Lusser: If the Court please, I object to that as being highly improper and highly prejudicial. There is absolutely no evidence—

"Mr. Cleary: Why, I say it is in evidence.

"The Court: The jury has heard the evidence. I don't know whether the word 'mysterious'—objection overruled. I will let the jury decide. I will overrule the objection."

Plaintiff-appellant has divided the passages of argument of which he particularly complains into four categories—(1) the argument of defendant's counsel relating to the witness Miller; (2) counsel's reference to "high speed" and "excessively high rate of speed" of plaintiff's vehicle; (3) counsel's argument concerning plaintiff's occupation; and (4) counsel's statement that plaintiff, having closed his case, had no further right to put on any evidence.

(1) and (4) In his opening statement plaintiff's counsel had spoken of testimony he expected to elicit of the witness Miller, but counsel had not offered Miller as a witness when plaintiff's case was closed initially. Defendant's counsel requested the privilege of further questioning plaintiff. This privilege was granted by the trial court. Plaintiff's case was in effect reopened; and defendant's counsel interrogated plaintiff. Plaintiff subsequently offered the witness Miller. Now it seems the witness Miller was not in the courtroom and plaintiff was obliged to have "someone go out there and pick him up." It is not contended by plaintiff that Miller, as a witness, was "equally available" to defendant. See Chavaries v. National Life & Accident Ins. Co. of Tennessee, Mo.App., 110 S.W.2d 790.

■ There is no question but a trial court in its sound discretion may allow a case to be reopened to afford a fair hearing of the evidence on the issues. A litigant should not be precluded from offering additional evidence simply because counsel has rested the case. Long v. Thompson,

353 Mo. 531, 183 S.W.2d 96; Conley v. Dee, Mo.App., 246 S.W.2d 385. Although, as stated, a trial court in its sound discretion may allow a case to be reopened, a party, having rested, may not introduce further evidence in chief without asking for and being granted leave or permission of the court to reopen his case. And, in our case, defendant's counsel in stating to the jury that "at that stage of the proceeding the plaintiff has no further right to put on any evidence" was only stating the legal effect of but one fact, step, event, or "stage" of the trial procedure (the fact that plaintiff has rested his case) preceding the sequence of procedure in this instance by which plaintiff's case was reopened. Of course, the jury heard plaintiff's opening statement in which his counsel stated the tenor of the testimony he expected to elicit of the witness Miller. The jury, after plaintiff had rested, heard the testimony of plaintiff relating to the absence of the witness. And the jury saw and heard witness Miller testify after he had been produced by plaintiff. Generally, the situation resulting from plaintiff's failure to call the witness Miller developed in the presence of the jury. We can see no error of the trial court in permitting defendant's counsel to argue (and plaintiff's counsel to argue the converse of) the inferences that plaintiff did not want the witness to testify; that plaintiff had excused the witness or sent him home or away from the courtroom; and that defendant had forced plaintiff to produce the witness. This is quite as the trial court ruled.

■ (2) No issue of negligence of plaintiff in moving at excessive speed was submitted to the jury; neither was there submitted any issue of negligence of defendant in failing to look out; however, as we have noted supra, defendant testified he had not seen plaintiff's vehicle until just "about the time we hit," and had no idea as to the speed plaintiff's vehicle was moving.

In his argument to the jury, plaintiff's counsel said that defendant "told you there

was nothing to obstruct his view as he came up towards Grand Avenue. * * * He doesn't see Collins coming through the south half of Lindell Boulevard. He doesn't see Collins' automobile until Collins' automobile is in a position where its right rear end is in a position to be hit. * * * Mr. Cowger has a wide open space and goes through and seeing nothing, goes into the rear end of Mr. Collins' automobile."

Obviously, plaintiff's counsel was exploiting the fact that defendant testified he did not see plaintiff's automobile; and quite as obviously, defendant's counsel in referring to the high rate of speed at which plaintiff's vehicle was moving was endeavoring to answer the argument of defendant's counsel by urging that plaintiff had approached and moved into the intersection at such excessive speed that defendant had not seen its approach. The argument of defendant's counsel was legitimate—a justified reply or rejoinder to the argument of plaintiff's counsel relating to defendant's failure to see plaintiff's car. Since plaintiff's counsel in argument bore down on the circumstance that defendant failed to see the approach of plaintiff's car, defendant's counsel had the right to urge such of the evidence as tended to explain defendant's failure to see. Even though defendant was unable to estimate the speed at which plaintiff's automobile was moving, there was other evidence tending to show that plaintiff had moved into and across the intersection at a high rate of speed. There was testimony that plaintiff's vehicle came to rest approximately one half block away from the point of collision, having turned over once on its side, or turned around a couple of times. And, as we have said, defendant testified that, upon being about to move into the intersection, he looked to his left and saw no traffic. We believe this evidence and the argument of plaintiff's counsel relating to defendant's failure to see plaintiff's car justified the argument of the inference that plaintiff had moved up to and into the intersection at high speed.

■ (3) Plaintiff, a witness, had been questioned concerning the time he had worked during the three years prior to the collision. He did not recall working in 1949; he worked twelve or fourteen weeks in 1950; twelve weeks in 1951; and two weeks in 1952. He explained that in his youth he had suffered a huge inguinal hernia which was not reducible. He cannot do heavy work. Police officers with duties at or near Grand and Olive testified they had seen plaintiff around there occasionally.

The clear intendment of the argument of defendant's counsel was to convey to the jury a contrast between defendant, a man working hard to make a living, and plaintiff, a man having a mysterious occupation or income from some source around Grand and Olive. These contrasting facts of the parties' employment statuses, urged by defendant's counsel, were not material to the issues and the trial court should have sustained plaintiff's objection to the argument. However, we cannot know that any sinister meaning is to be ascribed to or inferred from the facts that one is known around Grand and Olive and that the source of one's income is at or near Grand and Olive and has not been disclosed or explained. And, having examined the evidence in the record in its entirety, in so far as the evidence bore upon the issue of defendant's liability, we have the opinion that this argument, though improper, was not such as could be reasonably said to have affected the result of the trial of the case, when we add the fact that the trial court must have considered and ruled in the negative the question of the prejudicial effect of the argument in overruling plaintiff's motion for a new trial.

■ The field of argument is a broad one, but the law does not contemplate that counsel in argument may go beyond the issues or the record and urge prejudicial matters, or urge a theory of claim or defense which the law does not justify or which conflicts with the trial court's instructions submitting the issues of a case. Robbins v. Brown-Strauss Corp., 363 Mo. 1157, 257 S.W.2d 643; Phillips v. Vrooman, 361 Mo. 1098, 238 S.W.2d 355; Amsinger v. Najim, 335 Mo. 528, 73 S.W.2d

214. The trial court, however, is allowed large discretion in permitting or restraining argument and as to the manner in which improper argument is to be restrained or its prejudicial effect purged or cleansed, and the appellate court will not interfere unless it clearly appears that the trial court has abused its discretion. Pritt v. Terminal R. R. Ass'n of St. Louis, Mo.Sup., 251 S.W.2d 622; Crews v. Kansas City Public Service Co., 341 Mo. 1090, 111 S.W.2d 54; Hancock v. Kansas City Terminal R. Co., 339 Mo. 1237, 100 S.W.2d 570; Id., 347 Mo. 166, 146 S.W.2d 627; Rouchene v. Gamble Const. Co., 338 Mo. 123, 89 S.W.2d 58; Kelso v. W. A. Ross Const. Co., 337 Mo. 202, 85 S.W.2d 527; Hancock v. Crouch, Mo.App., 267 S.W.2d 36. This is because a judge, present and presiding at a trial at the time an assertedly improper argument is made, is in a better position that we to guage, in the circumstances surrounding a trial, the effect of counsel's remarks to a jury. It is recognized that in the stress of summing up the evidence and analyzing its probative effect in tending to support or refute the fact involved in a sharply contested factual issue, trial counsel's ardent advocacy sometimes impels him to go beyond the limits of fair argument; but when the trial court does not consider such instances sufficient to require a new trial, this court is inclined to defer to the trial court's opinion in these matters, unless upon a full examination of the record it appears that the improper argument was so prejudicial, inflammatory and outside the record as to affect the result on the merits.

The judgment should be affirmed.

It is so ordered.

COIL and HOLMAN, C.C., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.