STATE of Missouri, Respondent,

v.

Marvin CHANDLER, Appellant.

No. 46451.

Supreme Court of Missouri,

Division No. 2.

July 14, 1958.

See also, 297 S.W.2d 616.

Earl E. Roberts and Paul L. Bell, Steelville, for appellant.

John M. Dalton, Atty. Gen., Paul N. Chitwood, Asst. Atty. Gen., for respondent.

STORCKMAN, Presiding Judge.

Defendant was found guilty of forcible rape as charged in the information and his punishment assessed at two years in the penitentiary. After the overruling of his motion for new trial, the defendant was sentenced in accordance with the verdict and has appealed.

Pauline Robbins, a single woman residing in the City of St. Louis, was 20 years old at the time of the offense alleged to have been committed upon her. On Saturday, October 20, 1956, she went to Cherryville in Crawford County to be with her boy friend, Rainey Godbey, and to stay at his family home over the weekend. She arrived about 5:00 p. m. and shortly thereafter she went to Blue Haven, a dance hall, in the company of Rainey Godbey, Orville Cassidy, the defendant Marvin Chandler, and a girl named Marcella Garrett. After staying at Blue Haven 10 or 15 minutes, the young people left and went to the Spider, another dance hall, located on Missouri Highway No. 8. When they got there Pauline Robbins and her companions sat in the automobile and talked until a fight occurred, which was participated in by Rainey Godbey and the defendant. Godbey then instructed her to get into Cassidy's car, which she did, and later she got into the defendant's car along with Cassidy, Marcella Garrett and the defendant. Godbey was a musician and played at the Spider sometime during the evening. Around 12:00 or 12:30 Pauline Robbins, Marcella Garrett, Godbey, Cassidy and the defendant left the Spider and drove to the Chandler home in the defendant's car. Defendant's folks were away that weekend. When they arrived Godbey "was passed out," so Pauline stayed in the car with him. Eventually Cassidy and the defendant "carried Rainey in" and placed him on a bed in the living room where he remained, oblivious of all that happened during the remainder of the night.

After a while the defendant and Cassidy went outside. When they returned they locked the door and turned out the lights. The defendant grabbed Pauline by the arm and started twisting it backwards. She "started hollering" at Godbey, her boy friend, "and pulled his hair trying to wake him up, but he wouldn't even grunt." The defendant pulled Miss Robbins into a bedroom, twisted her arm and threw her on the bed. He told her to take off her pants which she did because she was afraid he would kill her. She was protesting all the time, begging him to turn her loose and let her go. As a result of her resistance her arms and knees were scratched and her neck was injured in addition to the skin on her arms being bruised and her dress torn. In spite of her resistance the defendant had sexual intercourse with her. The evidence tended to show that thereafter Cassidy also raped her.

While it was still dark Miss Robbins escaped from the house and walked along the road until she reached the home of Mr. and Mrs. John Doss, about a quarter of a mile east of the Chandler home, where she arrived about 4:30 Sunday morning. Miss Robbins told Mrs. Doss that she had been raped by the defendant Marvin Chandler. She appeared to be frightened and exhibited a place on the back of her leg that was bleeding. At Miss Robbins request Mr. and Mrs. Doss took her to the Godbey home in Cherryville and then to the home of Mont Turnbough, then Chief Deputy Sheriff of Crawford County, where they arrived between 5:30 and 6:00 a. m. Miss Robbins informed Deputy Turnbough that she had been raped in the Chandler home and requested the arrest of the defendant

and Orville Cassidy. Miss Robbins exhibited to Mr. Turnbough the wounds on her throat and arms, the skinned places on her knees, the bruised places on both wrists and on her nose and also her torn dress. The deputy sheriff directed Miss Robbins to go to the prosecuting attorney. Later in the morning the deputy sheriff assisted in the arrest of Marvin Chandler, the defendant.

At 11:55 a. m., October 21, Dr. William H. Robey, an osteopathic physician, examined Miss Robbins and found contusions on both her wrists, such as results from twisting of the arms; multiple bruises on the backs of both hands; an abrasion on the right elbow about the size of a dime and fairly deep; two scratches about 2 inches long behind the left knee; and a contusion more or less on the center line across the bridge of her nose. Examination of Miss Robbins' genital organs disclosed abrasions and the presence of spermatozoa.

In his testimony the defendant admitted that he had intercourse with Miss Robbins on the occasion in question, but asserted the act was accomplished without force and with her consent. Other testimony on behalf of the defendant was calculated to prove that Miss Robbins made no outcry or show of resistance on the night in question and could have escaped from the bedroom and the Chandler home if she had been inclined to do so.

■ Since the defendant has filed no brief on appeal, we shall examine each of the thirteen assignments of error in the motion for new trial. Insofar as the first four specifications have any standing, they charge that the evidence was insufficient to support the verdict "because complainant made no resistance but took off her clothes herself and no force was necessary." Such was defendant's theory of defense, but it was contrary to the state's evidence which the jury accepted. We have stated enough of the evidence to disclose that it was sufficient to support the verdict.

■ Grounds five and six of the motion charge that the wife of a juror, Arthur Grayson, and the defendant, Marvin Chandler, were related in that each had the same great-grandfather as shown by an affidavit attached to the motion, and that Arthur Grayson was, therefore, an incompetent juror within the purview of Section 546.120 RSMo 1949, V.A.M.S., which provides that no person of kin to the prosecutor or defendant shall serve as a juror on the trial of the cause. Assuming without deciding that a relationship exists within the meaning of the statute, there appear to be two good reasons why the defendant cannot claim prejudice in this situation.

First, the record does not show that either the defendant or the juror was aware of the relationship until after the trial was concluded. In a proper case on timely objection a juror within the prohibited relationship should be excluded on the ground of presumptive prejudice which is the basis of the prohibitory statute. However, where the juror was not aware of such relationship during the trial of the case it is not error to refuse a new trial because it is the juror's knowledge of the fact of the relationship that may be expected to and does make such juror biased or prejudiced. State v. Stewart, 296 Mo. 12, 246 S.W. 936, 939(3); State v. Miller, 331 Mo. 675, 56 S.W.2d 92, 95(6). The defendant alleges in his motion that the relationship "was not known to the defendant until after the trial but was well known to the juror." The only reference in the record to this subject matter is by the prosecuting attorney during his voir dire examination when he asked the veniremen the general question "Are any of you related by blood or marriage to Marvin Chandler, the defendant in this case?" to which question there was no response. The affidavit filed in proof of the relationship makes no reference to the juror's knowledge or lack of it. The unverified statement in the motion for new trial does not tend to prove the assertion. State v. Brewer, Mo., 286 S.W.2d

782, 784(6). The charge that the juror knew of the relationship is not borne out by the record.

■ The other equally sufficient reason why the claim of error must be denied is that the accused cannot object on the ground a juror is related to him, since presumptively he is helped by the relationship. State v. Thomas, 351 Mo. 804, 174 S.W.2d 337, 341 (8–10). The right to object is designed for the protection of adversary interests.

■ Instruction No. 4 told the jury the alleged wrongful act must have been done by force and "the woman must have made such resistance as she was capable of making to prevent it, and she must not have consented thereto." This supplements the state's verdict-directing Instruction No. 1 of which no complaint is made. The defendant alleges Instruction No. 4 is erroneous "because the force necessary to commit the alleged offense nor the resistance necessary for the complainant to make, is not properly set out in the instruction." The defendant offered no instruction of his own on this subject matter nor does he set out in his motion specific grounds for complaint; nor have we been able to discover any proper grounds. We hold the assignment insufficient to preserve anything for review. 42 V.A.M.S. Supreme Court Rule 27.20; Section 547.030, RSMo 1949, V.A. M.S.; State v. Sheard, Mo., 276 S.W.2d 196, 198(1).

■ The next two items of the motion for new trial, insofar as they have any effect, assert that the trial court erred in failing to instruct the jury on common assault. Under the record in this case the defendant was guilty of forcible rape if he was guilty of any crime. Since there was no evidence to support it, an instruction on common assault would have been improper. State v. Coffman, 360 Mo. 782, 230 S.W.2d 761, 763–764(5).

■ The tenth assignment is that the court erred in not permitting the defendant to cross-examine the complainant on prior acts of indecency. There is nothing in the record to support this charge and it is denied.

■ Next, the defendant asserts the court erred in permitting Dr. William H. Robey to testify as to the results of the physical examination he made of Miss Robbins about noontime on Sunday. Evidence of Miss Robbins' physical condition following the alleged attack was admissible. State v. Burton, 355 Mo. 792, 198 S.W.2d 19, 21(5); State v. Mitchell, 339 Mo. 228, 96 S.W.2d 341, 343(7); State v. Parsons, Mo., 285 S.W. 412, 414(5). The defendant further says that it was not shown whether the injuries were inflicted by him or Orville Cassidy. Miss Robbins' testimony was sufficient proof that her injuries were inflicted in her encounter with the defendant. On rebuttal she specifically denied she had tried to separate the participants in the fight at the Spider, as claimed by the defendant. She testified she got into Cassidy's car when the fight started and that she did not receive injuries of any kind at the Spider. Her testimony was sufficient foundation for the admission of evidence of her injuries and there was no error in overruling defendant's objection to Doctor Robey's testimony.

■ Nor did the court err "in failing to declare a mistrial because of the evidence of certain secretions found by the doctor." This was part of the physical examination and what we have said in ruling the previous contention applies with equal force here.

■ Lastly, the defendant contends he should have a new trial because "the verdict of the jury was a compromise verdict." He states the jury took more than six or seven hours to return its verdict, "asking for a leniency on the part of the Court." The record is devoid of any support for these assertions and they are not proved merely by their inclusion in the unverified motion for new trial. The assignment is without merit and is denied.

We have further determined that the information is in proper form and sufficiently charges the crime of rape. Section 559.260 RSMo 1949, V.A.M.S. The verdict is in proper form and responsive to the issues. The record discloses that allocution was afforded and judgment and sentence were duly pronounced.

No error appearing, the judgment is affirmed.

All concur.