Clyde HAMPTON, Lucinda Hampton, and Roger Hampton, by his next friend, Clyde Hampton, Plaintiffs-Respondents,

v.

Jane Anderson CANTRELL, Defendant-Appellant.

No. 8961.

Springfield Court of Appeals, Missouri.

March 2, 1971.

Donald E. Bonacker, B. H. Clampett, Daniel, Clampett, Ellis, Rittershouse & Dalton, Springfield, for defendant-appellant.

Henry W. Westbrooke, Jr., Miller, Fairman, Sanford, Carr & Lowther, Springfield, for plaintiffs-respondents.

HOGAN, Judge.

In this action to recover damages for personal injuries, the plaintiffs have had separate verdicts and judgments thereon in the aggregate amount of $5,700. The defendant appeals.

The casualty which gave rise to this action occurred at the intersection of Highway 13 and an otherwise unidentified "county road" four or five miles north of Springfield, Missouri. Highway 13 at this point runs north and south, and it is intersected at right angles by the county road, which runs east and west. At the time the accident happened—about 3:00 P.M. on Sunday, April 16, 1967—the weather was clear, the pavement was dry, and traffic on Highway 13 was "heavy." Highway 13 is a through highway at the place where the collision occurred, and there is a stop sign for eastbound traffic approaching the highway on the county road.

Plaintiff Clyde Hampton was driving his pickup north on Highway 13, accompanied

by his wife, plaintiff Lucinda Hampton, and their son, Roger. Mr. Hampton described the accident by saying that he saw defendant's vehicle approaching from the west when he was "thirty to forty feet" south of the stop sign. Defendant was "about the same distance" to the west. Mr. Hampton estimated that defendant was going "thirty or forty mile an hour." Mr. Hampton applied his brakes and started to swerve to the right to avoid a collision, but there was a ditch to his right, so he "pulled it back on so maybe I could beat her, and we met right in the intersection." The "front" of defendant's vehicle hit the left door of Mr. Hampton's pickup. The impact "knocked it [the pickup] over in the ditch * * * it hit a stone wall, went up astraddle of it and went down it for quite a little ways." Mr. Hampton testified that the collision took place "[j]ust about the center of the right-hand side of 13 Highway." Plaintiffs Lucinda and Roger Hampton also testified, but added nothing to Clyde Hampton's statement of the facts.

Plaintiffs also had the testimony of Trooper Gary C. Smith, who investigated the accident as a member of the State Highway Patrol. Trooper Smith was shown some pictures which he identified as being fair and accurate representations of the intersection as it appeared when the accident occurred. These pictures show, among other things, that the county road slopes sharply downgrade as one travels east to the intersection. The stop sign is clearly visible on the right in the picture taken on the county road some 800 yards west of the intersection. Trooper Smith testified that when he arrived Mr. Hampton's pickup was "off in a ditch * * * on top of a little concrete wall retainer," and defendant's vehicle was "sitting just about astraddle the center line [of Highway 13] * * * facing east." The defendant had told Trooper Smith that she was coming down the hill and the brakes wouldn't work. She had also said: " * * * I looked and there was a truck coming, and the brakes held the last mo-

ment." The trooper had found skidmarks, approximately 27 feet long, starting to the west of the point of collision and extending east to the defendant's vehicle. Trooper Smith had also checked the defendant's brakes shortly after he arrived. He found that they were working properly.

Plaintiffs also made use of a part of the defendant's pretrial deposition as an admission against interest. The substance of the part of the deposition read to the jury was that "thirty or forty minutes" before the accident the defendant had had trouble stopping her car. Defendant, in her deposition, was asked if her brakes were faulty, and she answered: "It was either the brakes or the steering." Defendant continued to drive her automobile. She also testified that she had been "given a ticket" for failure to yield the right of way, and she had pleaded guilty to that charge in magistrate court.

The defendant, Mrs. Cantrell, testified that she and a companion had been "riding around out in the country." Shortly before the accident occurred, defendant had trouble with her brakes; she "had trouble stopping," but " * * * finally got stopped." Defendant had been on the county road before; she knew that she had to go down a steep hill to get to Highway 13, and that there was a stop sign for eastbound traffic. Describing the action of her foot brakes on cross-examination, Mrs. Cantrell said that " * * * they held some but not enough to stop." Defendant's speed did not increase as she went downhill. She did not try to use her emergency brake. Defendant was asked if her emergency brake worked; she answered, "I guess it did. I didn't try it," and then stated that it was in proper working order. She "didn't think" she swerved to try to avoid the collision, and she didn't sound her horn. After she hit the pickup, a third car hit the rear of her vehicle.

Defendant also had evidence from her companion, Mrs. Lou Ann Van Hise. Mrs. Van Hise testified that as she and defendant went downhill defendant said her

brakes didn't work. Mrs. Van Hise remembered no earlier difficulty with the brakes.

■ Plaintiffs submitted their cases on a single verdict-directing instruction, Instruction No. 4, which was marked "M.A.I. 17.02 Modified," and was as follows:

"Your verdict must be for plaintiffs if you believe:

First, defendant either: violated the stop sign, or operated a vehicle when that vehicle had defective brakes, knowing that the brakes were defective, and

Second, defendant's conduct, in any one or more of the respects submitted in paragraph First, was negligent, and Third, as a direct result of such negligence, plaintiffs sustained damage."

Defendant's two points on appeal both have to do with this Instruction. She argues first that it was error to give Instruction No. 4 because it submits both ability and inability to stop, and therefore submits conflicting and inconsistent theories of negligence. Further, defendant says, Instruction No. 4 departs from the mandatory requirements of the MAI because it improperly unites separate and distinct claims, thus precluding a separate consideration of each particular claim.

In connection with defendant's first point—that Instruction No. 4 submits inconsistent and mutually contradictory theories of negligence—some preliminary observations seem appropriate. The defendant does not contend that plaintiffs violated Rule 70.01(b) by failing to use the appropriate MAI instruction, and no such contention was made in the trial court. We do not consider, therefore, the form and content of the instruction, nor whether it would have been more appropriate to submit the case upon approved instructions 17.08 and 14.05. Jackson v. Skelly Oil

Company, Mo., 413 S.W.2d 239, 242 [1]. Also, it should be noted that in the cases dealing with instructions which submit inconsistent theories of recovery the words "inconsistent" and "contradictory" have been used to indicate various types of incompatibility.[1] In some instances, as in Pijut v. St. Louis Public Service Company, Mo., 330 S.W.2d 747, and to some extent in Dilallo v. Lynch, 340 Mo. 82, 101 S.W. 2d 7, cited by the defendant, our courts have been concerned with the elementary principle that a party may not rely on a theory of recovery supported only by his adversary's evidence which contradicts his own. See in this connection Miller v. Riss & Co., Mo., 259 S.W.2d 366, 370–371 [2, 3], [4]. That principle is not involved here. In other cases involving the submission of inconsistent theories, for example, Crews v. Wilson, 312 Mo. 643, 281 S.W. 44, and Tunget v. Cook, Mo.App., 84 S.W.2d 970, cert. quashed State ex rel. Tunget v. Shain, 340 Mo. 434, 101 S.W.2d 1, our courts have expounded the rule that a party may not have the benefit of alternate theories of recovery or defense if the proof necessary to establish one theory would necessarily disprove the state of fact necessary to support the other. The meaning of this rule is explained and illustrated in such cases as Mahan v. Baile, 358 Mo. 625, 633–635, 216 S.W.2d 92, 95–97 [7, 8], and Edwards v. Business Men's Assur. Co., 350 Mo. 666, 686–688, 168 S.W.2d 82, 93–94 [21–24]. It is in this last sense that the defendant says plaintiffs' disjunctive submission is inconsistent. As we follow her brief and argument, defendant's point is that in requiring the jury to find that defendant violated the stop sign plaintiffs at least impliedly required a finding that defendant had the ability to stop, and in requiring the jury to find alternatively that defendant knowingly drove with defective brakes plaintiffs required the jury to find that she could not stop.

---

1. For a discussion of the precedents prior to the promulgation of present Rule 70.01, V.A.M.R., and the adoption of the Missouri Approved Instructions, see Richardson, A Codification of Missouri Rules Relating to Instructions in Civil Cases, 4 Mo.Bar C.L.E. Series, § 2.3, pp. 30–33 (1961).

In our view, the plaintiffs' theories were not inconsistent, at least in the sense contended for. In the first place, we doubt that a finding that the defendant "violated" the stop sign necessarily implies any finding with respect to the mechanical condition of her vehicle. As the plaintiffs point out, one may drive through a stop sign or traffic light either with or without good brakes. Moreover, plaintiffs' alternate theory was not that defendant's brakes suddenly failed; what the jury was required to find, and incidentally what the defendant testified to, was that her brakes were not working properly, and she knew or had some intimation that they might not stop her car. Mrs. Cantrell knew about the hill to the west of the intersection, and she was aware of the location of the stop sign. She had "had trouble" with the foot brakes shortly before the accident. As she drove downgrade, the foot brakes "worked some," and prevented her from accelerating, but she was unable to stop. Her brakes were defective, and she could have been found negligent in the circumstances in continuing to drive after she discovered they were not working properly. See Weisman v. Arrow Trucking Co., Mo.App., 176 S.W.2d 37, 40 [4–6]; 2 Blashfield, Automobile Law and Practice, § 107.4, pp. 462–463 (3d ed. 1965).

Nevertheless, and to reiterate, the plaintiffs' alternate hypothesis is not a submission of sudden and excusable brake failure, as discussed, for example, in Bramson v. Henley, Mo., 353 S.W.2d 609, 612–616 [2], for there are ways to stop an automobile other than by application of the foot brakes. Among the means suggested by the authorities are: reducing speed and putting the car into one of the lower gears, especially on hills or grades, see 60A C.J. S. Motor Vehicles § 296, pp. 223–224, and obviously, using the emergency brake. 60A C.J.S. Motor Vehicles § 261b, p. 103. A jury might find that defendant's brakes were defective and that she courted danger by continuing to drive with the knowledge that they were defective, and still find that

in the exercise of the highest degree of care she could have stopped. Even assuming that the hypothesis that defendant "violated the stop sign" includes a finding that she could stop, we believe the theories submitted do not conflict factually and are not repugnant.

Defendant's other briefed point is that Instruction No. 4 improperly submits the plaintiffs' separate claims as a unitary demand, thereby precluding separate consideration of each claim. Defendant concedes that the MAI does not expressly require multiple verdict-directing instructions in all cases involving more than one plaintiff, but she argues that such a requirement is to be implied from the form of approved instructions 36.07 and 36.08, both of which advise the jury that separate verdicts must be returned. Consideration of this point requires the statement of some further background.

All three of these plaintiffs were riding in the Hampton pickup. All three claimed to have been injured when it was struck by the defendant's vehicle. Since plaintiffs Clyde and Lucinda Hampton were husband and wife, and plaintiff Roger Hampton was their son, defendant's negligent act gave rise to six separate and distinct causes of action based on these personal injuries. Each spouse had a separate cause of action for personal injuries. Neither had any interest in the claim of the other for personal injuries, and neither was a necessary or proper party to the other's action. Lee v. Guettler, Mo., 391 S.W.2d 311, 313 [4–6]. In addition, each spouse had a claim for loss of consortium based upon the injuries to the other spouse, and these claims were separate, each being an "entirety unto itself." Rea v. Feeback, Mo., 244 S.W.2d 1017, 1019 [2]; Robben v. Peters, Mo.App., 427 S.W.2d 753, 756–757 [4]. Further, the injury to plaintiff Roger Hampton, who was nine years old when the accident occurred, gave rise to two separate and distinct claims, one for personal

injury and the other for loss of services and expenses of treatment. Evans v. Farmers Elevator Co., 347 Mo. 326, 338, 147 S.W.2d 593, 599 [9].

Plaintiffs did not file separate actions and then seek to consolidate them for trial, but asserted all the separate claims or causes of action which arose out of the casualty in a single petition. We need not set out the allegations of the petition in detail. It is sufficient to note that the petition is laid in six counts, which are, for our purposes, as follows: Count One, which asserts plaintiff Clyde Hampton's claim for personal injuries and the claim for expenses of his son's treatment; Count Two, which sets out plaintiff Lucinda Hampton's claim for personal injuries; Counts Three and Four, in which the two claims for loss of consortium are asserted; Count Five, in which plaintiff Roger Hampton's claim for personal injuries is asserted by his father as next friend; and Count Six, in which plaintiff Clyde Hampton's claim for property damage is set out. Counts Three, Four and Six (the claims for loss of consortium and for property damage) were dismissed at the close of all the evidence. Instruction No. 4 therefore submitted the plaintiffs' separate claims for personal injuries and plaintiff Clyde Hampton's claim for expenses of treatment for his son as a single, unitary demand.

We assume, without deciding, that the plaintiffs properly united their several claims in a single action under the permissive joinder provisions of Rule 52.-05(a), V.A.M.R.[2] No question of improper joinder is raised. Nevertheless, the separate and distinct claims of the several plaintiffs were not merged merely because the plaintiffs asserted them in a single action; joinder of separate claims under Rule 52.05(a) does not affect the substantive rights of the parties, and the separate causes joined remain separate as if they had been sued on separately. De Vito v. Hoffman, 91 U.S.App.D.C. 263, 199 F.2d 468, 470; Lansburgh & Bro. v. Clark, 75 U.S.App.D.C. 339, 127 F.2d 331, 338 [8, 9]; 3A Moore's Federal Practice, ¶ 20.05, p. 2776 (2d ed. 1970). We do not agree with defendant's broad assertion that multiple verdict-directing instructions are required in any case in which there are multiple plaintiffs; one may readily conceive a situation in which several plaintiffs would unite to enforce a single title or right in which they had a common, undivided or joint interest. We do agree that it was improper to submit plaintiffs' several claims for personal injury upon a finding of collective injury. All the claims for personal injury had elements in common, but each plaintiff was required to show individual, distinct injury as a prerequisite to the recovery of any sum as damages for personal injury. See Vanacek v. St. Louis Public Service Co., Mo., 358 S.W.2d 808, 810 [1]; Schaefer v. Accardi, Mo., 315 S.W.2d 230, 233 [6]; Biscoe v. Kowalski, Mo., 290 S.W.2d 133, 137–138 [4], [5, 6]; 38 Am.Jur. Negligence, § 18, p. 660.

We cannot approve Instruction No. 4, but the merits of defendant's assignment of error cannot be determined by considering it in isolation. Instructions must be read together as an entire charge. Jefferson v. Biggar, Mo., 416 S.W.2d 933, 939 [5]. Defendant's assignment of error, as expanded in the "argument" part of her brief, is that Instruction No. 4 was misleading—"a source of confusion"—because it indicated to the jury that all the plaintiffs must win or all must lose. As we have said, we do not believe we are dealing with a positive violation of an MAI requirement, and we therefore do not presume that the error is prejudicial, but consider whether or not the error demonstrated was one materially affecting the merits of the action. Rule 83.13(b), V.A.M.R.; Machens v. Machens, Mo., 263 S.W.2d 724,

2. See Franklin v. Shelton, 10 Cir., 250 F.2d 92, 95 [1, 2], and Thomson v. United Glazing Co., D.C.N.Y., 36 F.Supp. 527, 528 [1], applying Fed.R.Civ.P. 20(a), which is substantially the same as Rule 52.05(a).

## 750

732 [7]. In this case, in addition to Instruction No. 4, the court also gave Instructions 5, 6 and 7 (MAI 4.01) instructing the jury to assess the amount of each plaintiff's damages separately. It also gave Instruction No. 9 (MAI 32.07) which advised the jury that a separate verdict must be returned for each plaintiff. Plaintiffs' verdict-directing instruction does not omit any essential element; it merely states the required finding of injury in ambiguous and misleading language, and it is therefore subject to clarification by the other instructions. Losh v. Ozark Border Electric Cooperative, Mo., 330 S.W.2d 847, 853 [6]; State ex rel. St. Joseph Belt Ry. Co. v. Shain, 341 Mo. 733, 740, 108 S.W.2d 351, 355 [2]. Whether the jury was misled or confused to the defendant's prejudice by Instruction No. 4 depends on how it would be understood by an ordinarily intelligent jury when read in connection with the other instructions, Machens v. Machens, supra, 263 S.W.2d at 732 [7], and the question here is whether or not the jury, after reading Instructions 4, 5, 6, 7 and 9, would understand that it was to consider the claim of each plaintiff separately upon its merits, or would believe, as defendant argues, that all must win or all must lose. Reading the instructions together, it seems to us that they emphasize the severable nature of the plaintiffs' claims for personal injury. The argument made here that Instruction No. 4 was prejudicially confusing and misleading was presented directly to the trial court in the motion for new trial; it did not find Instruction No. 4 prejudicially misleading, and denied the motion. Considering the submission as a whole, we do not believe that the jury was misled in the manner suggested by the defendant.

Within the limitations noted, we find no prejudicial error, and the judgments are therefore affirmed.

TITUS, P. J., and STONE, J., concur.