Tom KENNEDY and Violet Kennedy,
his wife, Respondents,
and
Kay Kennedy, a minor, b/n/f Tom Kennedy,
Respondent-Appellant,

v.

James TALLENT, Appellant-Respondent.

Nos. 34566, 34581.

Missouri Court of Appeals,
St. Louis District,
Division One.

Feb. 20, 1973.

Roberts & Roberts, Kenneth Rohrer, Farmington, for respondents-appellants.

Buerkle, Buerkle & Lowes, Jackson, for appellant-respondent.

## PER CURIAM:

This appeal involves a collision between an automobile owned by plaintiffs Tom Kennedy and Violet Kennedy, his wife, which was being driven by Violet, and a car owned and operated by defendant James Tallent. Kay, the plaintiffs' five year old daughter, was a passenger in her mother's vehicle. The petition filed by the multiple plaintiffs was in three counts. In Count I Violet sought $10,000 for her personal injuries. In Count II Kay, by her next friend, her father, likewise prayed for $10,000 for her personal injuries. In Count III Tom and Violet jointly asked for $2500 for the damage to their car, $1,000 for the loss of their business operations, and $3,000 for medical treatment of Kay; and in the same Count Tom demanded $5,000 for the cost of Violet's medical expenses and his loss of consortium. In his answer defendant denied that he had been negligent and affirmatively pleaded contributory negligence on the part of Violet. Primary negligence on the part of the defendant was submitted by the plaintiffs, and the issue of Violet's contributory negligence was submitted by defendant. The jury returned the following separate verdicts: for $2,000 in favor of Violet for her personal injuries; for $500 in favor of Tom as the result of Violet's injuries; for $2,000 in favor of Tom and Violet for their property damages; for $500 in favor of Tom as the result of the injuries to Kay; and in favor of Kay on the issues, but assessed her damages for her personal injuries at "$ None." Judgment was entered, defendant's alternative motion was overruled, and this appeal by defendant followed. A motion on behalf of Kay for a new trial was likewise over-

ruled, an appeal taken, and the two appeals were consolidated here.

Since defendant makes no claim that a submissible case was not made or that Violet had been guilty of contributory negligence as a matter of law, an extended statement of the facts is unnecessary. It is sufficient to say that the collision occurred on July 25, 1970, about 10:00 A.M., at a point approximately one mile west of Highway KK on Route T, in Madison County, Missouri. The weather was clear and the pavement dry. Violet's eastbound automobile struck the defendant's westbound car as defendant was in the course of making a left turn to enter a driveway located on the south side of the highway.

Defendant's points on appeal extend from a complaint regarding the competency of a juror to his claim that the verdicts were the result of bias and prejudice on the part of the jury. The gist of the first to be considered is that the trial court erred in not granting defendant a new trial because the foreman of the jury, Noah J. Young, was guilty of intentionally concealing the fact that he was related to Violet by blood within the fourth degree of consanguinity. The matter was brought to the attention of the court in a supplemental motion for a new trial in the form of an affidavit by defendant's counsel, the essential part of which we quote in full:

"Albert C. Lowes, being first duly sworn upon his oath, states:

"1. He is one of the attorneys of record for the defendant and he makes this affidavit for and on behalf of the defendant.

"2. After placing the early motion for new trial in the mail late in the p. m. of 12–15–71, he received information on the night of 12–15–71 that the foreman of the jury, Noah J. Young, and Violet Kennedy were related well within the fourth degree of relationship by blood or marriage.

"3. He immediately conducted an investigation and found that the foreman

of the jury, Noah J. Young, and all plaintiffs are related as suggested in that Noah J. Young's mother was an aunt of Gus King, who is the father of plaintiff, Violet Kennedy.

"4. That had said juror related this information at time of voir dire when the questions were asked relative to relationship, defendant's counsel would have asked that said juror be excused for cause pursuant to Section 494.190 RSMo 1969 [V.A.M.S.].

"Further affiant saith not.

/s/ Albert C. Lowes
Albert C. Lowes"

While defendant's counsel in his affidavit refers to " * * * the questions (which) were asked relative to relationship * * *," a careful review of the transcript reveals that neither counsel even interrogated the panel in general, or juror Young in particular, regarding the matter of relationship to any party. However, while no direct question was asked, the matter of a juror's incompetency to serve because of his relationship was brought to the attention of the panel in that plaintiffs' counsel asked the panel whether any member considered himself a close friend or business associate of the defendant; juror Whitener indicated that he did, and when interrogated further stated that he was a third cousin of the defendant's wife. The court then commented: "Third cousin. That alone would excuse you, Mr. Whitener, relationship within the fourth degree is sufficient. You may stand aside, Sir. * * *" In brief, from this and other incidents which occurred during the voir dire examination we have no hesitation in concluding that the incompetency of a juror to serve because of his relationship by blood or marriage to a party was brought to the attention of juror Young.

■ If, when asked, or the circumstances indicate he should volunteer the information, a juror discloses that he is related to a party by blood or marriage within the

fourth degree of consanguinity he is incompetent to serve as a juror and should be excused. Section 494.190. And if he was aware of such relationship but concealed it a trial court which overruled a motion for a new trial when the relationship and the concealment were established would clearly commit error. But if a juror is unaware of his disqualifying relationship to a party at the time he is questioned he obviously is not concealing the fact of his relationship because he had no knowledge that he was so related to the party. Thus in the final analysis it is not merely the relationship of the juror which disqualifies the juror, but the relationship and his knowledge of it. And in order to obtain a new trial because of the incompetency of one who served as a juror the moving party must show more than the relationship; he must establish that at the time the juror was selected to serve he knew of his relationship and concealed or failed to reveal his knowledge of his disqualifying relationship. Those principles have been established in three comparable decisions of our Supreme Court. In State v. Chandler, Mo., 314 S.W.2d 897, 900, the court said:

"First, the record does not show that either the defendant or the juror was aware of the relationship until after the trial was concluded. In a proper case on timely objection a juror within the prohibited relationship should be excluded on the ground of presumptive prejudice which is the basis of the prohibitory statute. However, where the juror was not aware of such relationship during the trial of the case it is not error to refuse a new trial because it is the juror's knowledge of the fact of the relationship that may be expected to and does make such juror biased or prejudiced. State v. Stewart, 296 Mo. 12, 246 S.W. 936, 939(3); State v. Miller, 331 Mo. 675, 56 S.W.2d 92, 95(6). The defendant alleges in his motion that the relationship 'was not known to the defendant until after the trial but was well known to the juror.' The only reference in the record to this subject matter is by the prosecuting at-

torney during his voir dire examination when he asked the veniremen the general question 'Are any of you related by blood or marriage to Marvin Chandler, the defendant in this case?' to which question there was no response. The affidavit filed in proof of the relationship makes no reference to the juror's knowledge or lack of it. The unverified statement in the motion for new trial does not tend to prove the assertion. State v. Brewer, Mo., 286 S.W.2d 782, 784(6). The charge that the juror knew of the relationship is not borne out by the record."

And to the same effect see State v. Stewart, 296 Mo. 12, 246 S.W. 936 and State v. Miller, 331 Mo. 675, 56 S.W.2d 92.

■ In the instant case there is nothing in the record before us to indicate in any way that if Young was, in fact, a second cousin by blood of Violet that he was aware of that relationship at the time of the voir dire examination or before defendant's counsel filed his affidavit. In the affidavit, heretofore quoted, no claim is made that Young was aware of the relationship, and at the time defendant's motion for a new trial was heard and submitted defendant did not call any witness or produce any evidence of any kind, much less evidence that at the time of the voir dire examination Young knew, or during the trial learned, that he was related to Violet. In the absence of such evidence the trial court did not err in overruling defendant's motion for a new trial. State v. Chandler, supra.

Defendant's next point concerns an incident which occurred during plaintiffs' counsel's direct examination of Tom:

"Q. Okay. And with regard to Violet Kennedy and Kay Kennedy, will you tell us what relation they are to you?

"A. My wife and daughter.

"Q. Okay. And how old is Kay?

"A. She's a little over six right now.

"Q. All right. And how long have you and your wife been married?

"A. About twenty-three years.

"Q. Do you have any other children, Sir?

"A. Yes, sir.

"Q. And what are their ages?

"MR. LOWES: Objection, Your Honor, not relevant to this issue, prejudicial, appeal to sympathy.

"THE COURT: No. Go ahead, go ahead.

"A. I've a daughter about twenty-one, and I have a son fifteen, and one thirteen."

■ Defendant now claims that the trial court prejudicially erred in admitting the introduction of evidence that Tom and his wife had three children in addition to Kay, and their ages. The short answer to the first part of defendant's complaint, as shown by the foregoing excerpt, is that defendant made no objection when Tom was asked, and answered, that he and his wife had three other children, and no other relief was sought. Having allowed the evidence of the existence of the three other children to be introduced without objection, we fail to see how defendant could have been prejudiced by the further evidence as to their respective ages, particularly where the answer permitted did not disclose that they were of such young and tender years as to evoke sympathy.

At the request of the plaintiffs the court gave the following instructions: (1) On behalf of Violet, Instruction No. 2, being her verdict directing instruction, (MAI 17.02) including the tail as to contributory negligence; and Instruction No. 3, her damage instruction, (MAI 4.01) omitting the reference to future damages; (2) On behalf of Kay, Instruction No. 4, as her verdict directing instruction, (MAI 17.02) and Instruction No. 5, as her damage instruction, (MAI 4.01), omitting future damages; (3) On behalf of Tom and Violet, Instruction No. 6, as their verdict directing instruction, (MAI 17.02) with the added reference to contributory negligence; and Instruction No. 7, as their damage instruction, (MAI 4.02); (4) On behalf of Tom, as his verdict directing instruction because of Violet's injuries, Instruction No. 8, (MAI 17.02 modified); Instruction No. 9, as his damage instruction because of Violet's injuries, (MAI 4.01, modified); Instruction No. 10, as his verdict directing instruction for Kay's injuries, (MAI 17.02, modified); and Instruction No. 11, as his damage instruction for Kay's injuries, (MAI 4.01, modified).

■ In his third point defendant argues that it was error to give five damage instructions, and that only two, one based on MAI 4.01 and the other on MAI 4.02, should have been given. In Hampton v. Cantrell, Mo.App., 464 S.W.2d 744, 749, where the claims of multiple plaintiffs were asserted in separate counts of one petition, the court in approving the submissions said: " * * * All the claims for personal injury had elements in common, but each plaintiff was required to show individual, distinct injury as a prerequisite to the recovery of any sum as damages for personal injury. See Vanacek v. St. Louis Public Service Co., Mo., 358 S.W.2d 808, 810 [1]; Schaefer v. Accardi, Mo., 315 S.W.2d 230, 233 [6]; Biscoe v. Kowalski, Mo., 290 S.W.2d 133, 137–138[4], [5, 6]; 38 Am. Jur. Negligence, § 18, p. 660." Furthermore, after an illustration on Page 407 of MAI of separate damage instructions, one for a wife for her injuries and the other for his damages as the direct result of the injuries to his wife, the Committee commented, "While there is an unfortunate degree of duplication in the two damage instructions, it would not be proper to combine them. The jury might find for the wife and also find that the husband had not been damaged as a result of the occurrence. To imply that injury to the wife meant injury to the husband would be error." Logically, it would likewise have been improper to have combined in one instruction the damages to Kay for her injuries, and Tom's

damages resulting from the injuries to Kay. In short, the separate damage instructions served to clarify for the jury the individuality and distinctiveness of the separate claims, and were in accord with the separate verdicts returned on the various claims.

■ In a subpoint defendant further complains Tom and Violet should not have been allowed to give Instruction No. 7 (MAI 4.02), defining the measure of damages for the damages to their car, because as the Committee's Note on Use states, MAI 4.02 is to be used " * * * in cases involving property damage only." It is true that in Count III of their petition Tom and Violet, in addition to asking $2500.00 for the damage to their car, also jointly prayed for $1,000.00 for the interruption to their business and for $3,000.00 for Kay's medical expenses. However, without objection plaintiffs' evidence developed that the alleged business loss, and the cost of the medical attention, were sustained by Tom individually. Thus in effect the petition was amended to conform to the evidence, and as the only joint claim which remained was that for the damages to the car it was not error to give Instruction No. 7.

Defendant's third subpoint on the question of the instruction is that error was committed in the giving of five verdict directing instructions, but by design or oversight he fails to state how many might properly have been given. The error claimed has been decided adversely to defendant in Hampton v. Cantrell, supra, and what we have said regarding the separate damage instructions is likewise applicable here.

■ Defendant's fourth point is that the court erred in overruling an objection to a portion of the argument of plaintiff's counsel, and in failing to reprimand plaintiffs' counsel after an objection had been sustained to another portion. In the course of his final argument plaintiffs' counsel contended:

"You must decide, as Mr. Lowes said, who is the Judas in this case, who is

telling you the truth. No, if Mr. Tallent was telling you the truth and he wasn't negligent, why hasn't he brought a claim before you in this case? It wouldn't of cost him any more. Mr. Lowes is here anyway. Why didn't he bring a claim for his automobile loss? He hasn't. There is no counter-claim in this whatsoever.

"MR. LOWES: Judge, I object to that; that's totally inproper. (sic)

"THE COURT: No, I'd say it's proper rebuttal. Proceed.

"MR. LOWES: A comment on the fact we didn't bring a counterclaim?

"THE COURT: I've ruled, Mr. Lowes."

Defendant's objection that the argument was "totally improper" was about as general as one could be, Kelley v. Hudson, Mo. App., 407 S.W.2d 553, and the general rule is that where a general objection was made, the trial court's discretion in disposing of it has usually not be disturbed. Collins v. Cowger, Mo., 283 S.W.2d 554; Donley v. Hamm, Mo., 98 S.W.2d 966; Ternetz v. St. Louis Lime & Cement Co., Mo., 252 S.W. 65. Assuming that the argument was improper, as we think it was, the trial court exercised its discretion in overruling the motion for a new trial and it does not appear that the argument made but once, was so inflammatory or prejudicial as to have affected the result of the trial of the case on its merits. Stewart v. Boring, Mo., 312 S.W.2d 131; Collins v. Cowger, supra.

■ As to defendant's complaint that the trial court erred in failing, as requested, to reprimand counsel, the record shows that the court did admonish plaintiffs' counsel that the objection to counsel's interjecting his personal thoughts and experiences had been sustained, and directed counsel to pursue another vein of argument. We are of the opinion that in essence the court's rebuke to plaintiffs' counsel was a reprimand. Furthermore, " * * * The matter of reprimanding counsel is discretionary with the trial court. * * *" Hunt v. Hunt, Mo., 423 S.W.2d 682, 684.

In defendant's fifth point error is claimed in overruling defendant's objection to the following portion of plaintiffs' counsel's closing argument concerning Tom's damage instruction:

"The fourth and fifth [1] one are for Mr. Kennedy for his, what is called loss of consortium for his wife; that is, the money he spent on medical for his wife, four hundred some odd dollars, the amount of loss income he had, $25.00 a day, if you will, for part of the summer, at least. We submit that it should be at least $1500.00, or for that loss of income which may continue for years and years.

"And the next—

"MR. LOWES: I object to the argument on permanency; it's not been instructed on, Your Honor.

"THE COURT: Overruled. Proceed."

Omitted from Instruction No. 9 was the bracketed future damage clause appearing in MAI 4.01, which the Notes on Use indicates is to be used only if it is supported by the evidence. Kramer v. May Lumber Co., Mo.App., 432 S.W.2d 617. In their brief plaintiffs do not point to any evidence which they contend would justify an argument for future damages. It would seem to logically follow that if it is error to instruct on future damages when it is not supported by evidence, Kramer v. May Lumber Co., supra, it is likewise error to permit an argument as to future damages to be made if it not only lacks evidentiary support but is not submitted in an appropriate instruction on damages. We therefore hold that the court erred in overruling defendant's objection. However, for error to be reversible it must have been prejudicial to the complaining party. Wilcox v. St. Louis-Southwestern R. Co., Mo., 418 S.W.2d 15. Defendant maintains that the verdict to Tom for his loss of consortium and the cost of medical attention rendered Violet was excessive, as required where the error related to that of damages, Anderson v. Bell, Mo., 303 S.W.2d 93; Miller v. Haynes, Mo.App., 454 S.W.2d 293, but the record does not support his claim. From the evidence the jury could have found that Tom expended over $300.00 for doctor and hospital bills for attention required by Violet, and there was also evidence, though rather indefinite, as to Tom's loss of earnings because of Violet's inability to drive the logging truck, as well as his loss of consortium. The verdict in his favor for all three items of damage was $500.00, which scarcely sustains a claim of excessiveness.

Defendant's sixth and seventh points concern the amounts of the verdicts, and in large measure are duplicitous, as he concedes in his brief. Defendant maintains that the verdicts were so gross and excessive as to indicate bias and prejudice on the part of the jury; or, alternatively, that they were so excessive as to require remittitur. As to the first contention, the trial court rejected the claim of excessiveness due to the bias and prejudice of the jury, the defendant fails to point to any incident during the trial which he claims engendered bias and prejudice, and the respective verdicts were not so large as to demonstrate excessiveness in and of themselves. McConnell v. Pic-Walsh Freight Co., Mo., 432 S.W.2d 292, 301. And as to the second contention, in the very recent case of Worley v. Tucker Nevils, Inc., No. 34501, handed down February 6, 1973, this court held that henceforth it would decline to exercise its discretionary power to review the amount of a verdict through the remittitur device, and would remand for a new trial if the verdict was so grossly excessive or inadequate as to demonstrate that it was the result of bias and prejudice.

However, defendant also claims that the evidence did not support the amount of the verdict, $2,000.00, rendered to Tom and Violet jointly for the damages to their car. We agree. The evidence most favorable to them was that given by

---

1. Actually numbered eight and nine.

Tom, who testified that the car was worth "$2000.00 or better" before the accident, and "roughly $700.00" after the accident. How much "better" than $2,000.00, $2,100.-00? Or $2,200.00? Clearly the verdict lacked sufficient evidentiary support and the amount awarded must have been arrived at by the jury as the result of speculation and conjecture.

Defendant's final complaint is that the verdict of the jury that it found the issues in favor of Kay, but assessed the damages for her personal injuries at "none," and the verdict in favor of Tom awarding him $500.00 "as the result of the injury to Kay," are inconsistent with regard to the damage portions thereof. The situation which prevails in this case is stronger than that which existed in Foster v. Rosetta, Mo., 443 S.W.2d 183. There in one count the husband sued for his personal injuries, and in the second count the wife claimed damages for her loss of consortium. The wife adduced undisputed evidence in support of her claims for loss of consortium. The jury returned a verdict on the husband's claim but against the wife on hers. The trial court granted the wife a new trial, and the Supreme Court (443 S.W.2d at 186) held that " * * * it would have been reversible error if a new trial had not been awarded on ground 10," the claim of inconsistency.

 Plaintiff Kay contends that if the verdicts are found to be inconsistent our remand as to her should be as to damages only. Defendant argues that both should be on the issues of liability as well as damages and cites Boone v. Richardson, Mo. App., 388 S.W.2d 68 in support of his argument. We do not consider that case applicable here for the reason that there was but a single plaintiff, and from the verdict in favor of plaintiff, but a finding of "$10" damages, it could not be determined that there had been a definite finding for either party. In this multiple plaintiffs' case it is obvious that in each and every claim the jury consistently determined the issues of liability in favor of all of the respective plaintiffs, including Kay and Tom. The evidence as to Kay's alleged injuries was sketchy and weak, and we suspect that the jury may have felt that Kay was not entitled to any damages but that Tom, her father, was entitled to the cost of the medical services he provided for her which, however, amounted to only about $140.00 according to Tom. In any event, it is apparent that the verdicts for Kay and Tom are inconsistent.

Those parts of the judgment as to Violet, and as to Tom for Violet's injuries and his loss of consortium, are sustained. Those parts as to Tom and Violet for the damages to their car, as to Kay for her personal injuries, and as to Tom for Kay's injuries, are reversed and remanded for a new trial on the issue of damages only.

All concur.