**MFA LIVESTOCK ASSOCIATION, INC., Respondent,**

v.

**Steven C. and Jill E. SHREWSBURY, Appellants.**

**No. WD 53987.**

Missouri Court of Appeals, Western District.

March 24, 1998.

John Young, Princeton, for Appellants.

Kenneth Hassler, Kansas City, for Respondent.

SPINDEN, Presiding Judge.

When Steven and Jill Shrewsbury terminated a contract with MFA Livestock Association, Inc., for the care and feeding of MFA's cattle, MFA filed a petition on account. The circuit court determined that the Shrewsburys owed MFA $10,343.18 plus interest, and the Shrewsburys appeal. We affirm.

On December 10, 1993, the Shrewsburys and MFA contracted for MFA to provide cattle to the Shrewsburys in exchange for the Shrewsburys' feeding and caring for the animals. The contract, which referred to the Shrewsburys as "feeder," said:

> Feeder accepts all liability for the livestock placed under this contract[.] Feeder further acknowledges that he/she shall be responsible for any loss incurred in the event that proceeds as defined in Section XI fail to meet costs as set forth in section VI and IX of this contract. Feeder agrees to remit payment for any such losses to [MFA] within ten (10) days after Feeder is notified of the amount due [MFA].

The contract also provided that the Shrewsburys were to receive any net profits from the cattle's sale, less "the cost of the livestock sold, service charges, the cost of all dead and missing livestock, and other expenses incurred by [MFA] on behalf of the Feeder."

During 1995, MFA delivered 176 calves to the Shrewsburys. In June 1995, MFA sold 144 of the cattle at a public auction, and the remaining 32 animals remained under the Shrewsburys' care and control. In Decem-

ber 1995 or January 1996, MFA found, during a routine inspection, that the livestock had deteriorated to a poor condition. In January 1996, the Shrewsburys told MFA that they were selling their farm and would no longer be caring for the animals.

After the Shrewsburys sold their farm and quit tending to the 32 animals, MFA contracted with a third party to feed them. On March 28, 1996, MFA sold the cattle at a private sale because of their poor condition and to avoid additional expenses incurred with a public auction. Following the sale, the Shrewsburys still owed MFA $10,343.18.

In their first point on appeal the Shrewsburys contend that the circuit court erred in not allowing Steven Shrewsbury and his father to testify about (1) MFA's statements regarding the contract, (2) the parties' intent and understanding of the contract, (3) performance of the contract, (4) the intent concerning the uncompleted blanks of the contract, (5) consideration for the contract, and (6) the "illegibly and unconsciousableness" of the contract. They argue that such evidence should have been allowed as an exception to the parol evidence and hearsay rules.

Although the Shrewsburys did not direct us to the specific parts of the transcript where this evidence was excluded, we found the circuit court's sustaining of hearsay or parol evidence objections to these questions to Steven Shrewsbury:

(1) Did [Duke Dillard or John Anderson of MFA] ever explain to you that, if the cattle had a loss, that you would owe MFA money?

(2) When you entered into this agreement, was there any explanation given to you as far as what costs, service charges, and other expenses incurred by MFA would be in detail?

(3) When you entered into this agreement on 12–15–93, were there any discussions with MFA representatives concerning what the costs, sold, service charges, cost of dead and missing livestock, and

other expenses incurred by MFA on behalf of the feeder would be?

(4) And part of what you were relying on without getting into what somebody said, that concerned what profit you would have and what liability you might have if there was a loss?

As to Steven Shrewsbury's father, Edwin Shrewsbury, the Shrewsburys argue that he should have been allowed to testify concerning agreements with MFA because of his expertise. The circuit court would not allow Edwin Shrewsbury to testify about similar agreements he had with MFA for feeding cattle.

■ At no point in either Steven Shrewsbury's or Edwin Shrewsbury's testimony did the Shrewsburys make an offer of proof. After the circuit court refused to allow the testimony, the Shrewsburys were obligated to make an offer of proof demonstrating the relevancy and materiality of the improperly excluded testimony. *Thayer v. Sommer,* 356 S.W.2d 72, 80 (Mo. banc 1962); *Turner v. Fuqua Homes, Inc.,* 742 S.W.2d 603, 613 (Mo.App.1987). Because the Shrewsburys did not do this, they failed to preserve the point for our review, and we cannot convict the circuit court of error.

■ In their second point on appeal, the Shrewsburys contend that the circuit court erred in granting judgment to MFA for an additional 26 head of cattle because the contract was for 150 head of cattle. The contract said, "The Feeder, hereby, accepts up to, but not to exceed at any one time, 150 head of calves to be placed at the feeding locations previously listed." [1] MFA, however, delivered 176 head of cattle to the Shrewsburys, and the Shrewsburys accepted them. The Shrewsburys now claim that because the additional cattle were not a part of the parties' agreement, they cannot be held responsible for them.

The contract, however, clearly contemplated that additional livestock could be placed beyond the number specified in the blanks filled in by the Shrewsburys, so long as the

---

**1.** The underlined portions were the items that Steven Shrewsbury wrote in the blanks provided on the contract.

Shrewsburys accepted them. The contract said, "[MFA] and Feeder are not obligated to place or receive additional lots of livestock. [MFA] and Feeder shall give each other written notice that additional lots will not be placed as soon as practical." At no time did the Shrewsburys notify MFA that the additional livestock were not acceptable. Nor did they refuse delivery or refuse to care for and to feed the animals.

◼ The Shrewsburys argue that MFA "failed to prove consideration given and received for the 150 calves or the total 176 cattle." They contend that further evidence should have been allowed to determine "[w]hether or not [the contract] was completed, [the parties'] intent of just 150 head of calves and why the total was 175 head of cattle, the consideration price, time and legality of the parties relationship."

◼ To the extent that the Shrewsburys attempted to introduce this type of evidence at trial through the above-mentioned questions to Steven Shrewsbury and Edwin Shrewsbury, their attempt failed. They did not make an offer of proof. Moreover, adequate consideration existed for the contract. MFA promised to supply the Shrewsburys with cattle and to pay them the profit when they were sold. In exchange, the Shrewsburys promised to feed and to care for the animals. "Mutual promises imposing some legal duty or liability on each promisor are sufficient consideration to form a valid, enforceable contract." *Allied Disposal, Inc. v. Bob's Home Service, Inc.,* 595 S.W.2d 417, 419 (Mo.App.1980).

◼ In their third point on appeal, the Shrewsburys assert that the circuit court erred by not giving them credit for the price protection guarantees (putts) on the cattle. They argue that MFA failed to present any evidence on the putts and that the circuit court did not allow or consider their evidence on the putts. We disagree.

Dennis Miller, an MFA manager, testified regarding the amounts received from the sale of the cattle, the costs incurred and credits given. MFA also introduced evidence of a recap of all the sales, charges and credits (including putts) given to arrive at the amount that was due from the Shrewsburys.

The Shrewsburys contend that MFA did not establish that the Shrewsburys received proper credits for the putts. The Shrewsburys, however, did not cross-examine Miller about whether the Shrewsburys were given credits for the putts. Instead, they relied on Edwin Shrewsbury's testimony regarding putts. Edwin Shrewsbury testified:

[B]y [MFA's] recap sheet submitted they show—they show the purchase cost of the [putts] $2,560. That would be like the premium cost when you purchased them, but they do not ever show the sale value of [putts] when they were sold. The idea of buying a [putt] is to protect you in a downside market. The market was declining or falling. That's why the cattle did not bring as much money as they cost. They owned the [putts]. The [putts] should have been making money every day the live cattle were decreasing in value. And in this case, they very well could have amounted to up to $5,000 per contract. In this case, they had four contracts. It could have easily amounted to $20,000.... I see no—no indication here that that [putt] position was ever marketed or credited to this account. It was charged as an expense but no income.

The circuit court as the trier of fact, "may believe all, part or none of the testimony of any witness." *Trenton Trust Company v. Western Surety Company,* 599 S.W.2d 481, 483 (Mo. banc 1980). The circuit court said in its letter to the parties explaining its judgment, "[T]he Court presumes the benefit of the cattle putts was reflected in the proceeds of sale of cattle. This is not entirely clear from Plaintiff's Exhibit 'B,' but that is merely a recapitulation or summary of the more detailed financial transactions pertaining to this agreement." The circuit court obviously believed MFA's evidence and not the Shrewsburys'.

◼ In their fourth point, the Shrewsburys contend that the circuit court erred in finding that the sale of the remaining cattle in a private sale was proper. They argue that because the circuit court classified the parties' relationship as a "lending institution"

the Uniform Commercial Code, § 400.9–504, RSMo 1994, should apply. They assert that they should have been given notice of the sale and the sale should have been conducted in a commercially reasonable manner. The circuit court did not determine that MFA was a lending institution; it merely said in its letter to the parties, "Basically, [MFA] . . . served as a lending institution in procuring feeder calves for [the Shrewsburys]." The circuit court was using an analogy.

Nonetheless, the Shrewsburys raise the issue for the first time on appeal. Before we can address an issue on its merits, an appellant must raise the issue before the circuit court. "An issue is not presented for review if it is not presented to the trial court." *Bowman v. McDonald's Corporation,* 916 S.W.2d 270, 276 (Mo.App.1995).

 The Shrewsburys argue that even if the U.C.C. does not apply, MFA had the duty to mitigate its damages by disposing of the cattle in a reasonable time. Given the condition of the cattle and MFA's attempt to bring the cattle up to a marketable condition, the timeliness of the sale was reasonable under the circumstances of this case. Moreover, if MFA had attempted to sell the cattle immediately, in all likelihood, the cattle would have brought in even less money. The Shrewsburys' contention is without merit.

 In their final point, the Shrewsburys argue that the circuit court erred in granting judgment on MFA's petition on account because it did not plead and prove a petition on account. They also assert that MFA tried the matter as a breach of contract action and that it failed to plead and prove that cause of action. The Shrewsburys' brief acknowledges, "This is Shrewsbury weakest point."

 An action on account is based on contract. "Sufficiency of proof depends upon the showing of an offer, an acceptance, consideration between the parties, the correctness of the account and the reasonableness of the charges." *Dyna Flex Limited v. Charleville,* 890 S.W.2d 413, 414 (Mo.App.1995). To make a submissible case, MFA had to show that (1) the Shrewsburys requested MFA to furnish cattle, (2) MFA accepted the Shrews-

burys' offer by furnishing the cattle, and (3) the charges were reasonable. *Id.*

 MFA proved its case. The contract evidenced the offer, acceptance and consideration between the parties. The recap summary of the charges and the testimony of Dennis Miller established the correctness of the account and the reasonableness of the charges. Moreover, even if this case was tried as a breach of contract case, evidence presented at trial without objection automatically amends the pleadings to conform to the evidence, and the issues are deemed to be tried by consent. *Murray v. Ray,* 862 S.W.2d 931, 934 (Mo.App.1993). Issues tried by consent are treated as if they had been raised in the pleadings. *Shelton v. Julian,* 610 S.W.2d 129, 131 (Mo.App.1980). The Shrewsburys did not object to the admission of the contract or the recap of figures into evidence.[2]

We affirm the circuit court's judgment.

LAURA DENVIR STITH and EDWIN H. SMITH, Judge, concur.

---

**2.** The Shrewsburys objected to the figures' accuracy but not to the exhibit's admission.