Evelyn BRENNEKE, Respondent,

v.

**DEPARTMENT OF MISSOURI, VETERANS OF FOREIGN WARS OF UNITED STATES OF AMERICA, Appellant.**

Nos. WD 54564, WD 54649.

Missouri Court of Appeals,
Western District.

Nov. 10, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 22, 1998.

Application for Transfer Denied
Feb. 23, 1999.

Daniel L. Seiden, Jefferson City, for appellant.

David J. Moen, Jefferson City, for respondent.

Before Presiding Judge FOREST W. HANNA, Judge LAURA DENVIR STITH and Judge EDWIN H. SMITH

LAURA DENVIR STITH, Judge.

The Department of Missouri, Veterans of Foreign Wars of the United States (hereinafter "VFW"), appeals the trial court's judgment based on a jury verdict awarding $100,000.00 to Plaintiff–Respondent, Evelyn Brenneke. The jury found that Ms. Brenneke had been wrongfully terminated in violation of the "whistleblower" public policy exception to Missouri's employment-at-will doctrine. The VFW asserts that the trial court erred in refusing to grant its Motion to Dismiss and its Motion For Judgment Notwithstanding the Verdict (JNOV) on Ms. Brenneke's whistleblower claim. The VFW also claims that Ms. Brenneke's testimony as to her own future lost earnings was unduly speculative, and the court erred in allowing her counsel to discuss future lost earnings during closing argument despite the court's decision not to include the future damages clause of MAI 4.01 in the damage instruction.

We find that the evidence did support the submission of Ms. Brenneke's claim for wrongful termination. We agree with the VFW that the trial court erred in permitting plaintiff's counsel to ask for future lost earnings during closing argument, yet at the same time refusing to instruct the jury that it could award damages for injuries plaintiff

1. Ms. Brenneke has not appealed these rulings.

was reasonably certain to sustain in the future. However, we do not find plaintiff's testimony as to lost earnings was unduly speculative. As a result, the error was not in allowing plaintiff's counsel to argue future damages, but in failing to include the future damage clause in the instructions. As that error was favorable, rather than prejudicial, to defendant, and as the two evidentiary matters raised by defendant also either do not constitute error or were not prejudicial, the judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Brenneke was fired from her job as a bookkeeper at the VFW on April 7, 1994. She filed suit against the VFW, alleging wrongful termination, discrimination based on a disability, and retaliatory discharge for exercise of workers' compensation rights. The VFW filed a motion for summary judgment on all three claims. The trial court granted summary judgment on the claims for disability discrimination and retaliatory discharge.[1] The trial court denied the VFW's motion for summary judgment on Ms. Brenneke's wrongful discharge claim, however, and permitted the claim to proceed to trial.

At trial, Ms. Brenneke presented evidence that she was fired for reporting to other VFW personnel that her boss, Wayne Bryant, the VFW's Adjutant/Quartermaster in this area, had been stealing VFW monies. Specifically, she alleged that Wayne Bryant was stealing money and charging personal expenses to VFW accounts and then not paying these charges back. She also said that he would handle cash sent by mail by VFW members and would keep some of the money without accounting for it. She said that, in 1992, she spoke about Mr. Bryant's conduct to Jim Mueller, who was on the Council of Administration of the VFW. She said he told her to get evidence, and thereafter she kept records of Mr. Bryant's expense reports seeking reimbursement when he was not traveling. She also claimed she spoke to Mr. Mueller about Mr. Bryant by telephone on three subsequent occasions.

Ms. Brenneke also testified that she spoke with two VFW service officers, Dennis Flynn and Ron Wooderson, about Wayne Bryant's alleged stealing. She asserted that she was fired because she had undertaken such internal "whistleblowing." She also presented the testimony of a former co-worker, Linda Meckfessel. Ms. Meckfessel said she, too, had been fired because she and Ms. Brenneke had reported theft by Mr. Bryant to Dennis Flynn, Jim Mueller, and Ron Wooderson. Ms. Meckfessel further testified that after she told Mr. Wooderson that she had reported Mr. Bryant's stealing to the Jefferson City police, she was treated differently by Mr. Bryant and his secretary. Ms. Meckfessel stated she was discharged shortly thereafter.

Mr. Bryant's secretary, Chris Ordway, testified that after Ms. Meckfessel was terminated, Ms. Brenneke's work performance deteriorated. Although Ms. Ordway claims Ms. Brenneke was never specific about her allegations regarding Mr. Bryant's financial improprieties, she admitted that she never saw Mr. Bryant reimburse the VFW for personal purchases he made on VFW accounts. Mr. Bryant also admitted during his testimony he had purchased with VFW accounts a power sprayer, vacuum, convection oven, as well as other items, for his own personal use. Mr. Bryant was unable to show that he ever reimbursed the VFW for these purchases.

The VFW presented contrary evidence that the members of the council voting on Ms. Brenneke's dismissal did not know of her whistleblowing allegations at the time they voted to terminate her employment and that Ms. Brenneke was discharged for causes other than her whistleblowing activity. Mr. Bryant detailed the reasons for Ms. Brenneke's termination, including missing several days of work, consistently failing to perform duties assigned, arriving late for work, and mistakenly ordering 5,000 poppies for a 500 poppy order. Ms. Ordway testified that Ms. Brenneke had been "scolded" by Bryant and Ordway about her job performance, and the reasons detailed above, before she was fired. Mr. Bryant also offered explanations for his alleged misconduct.

The jury returned a $100,000.00 verdict in favor of Ms. Brenneke. The VFW's post-trial motions for JNOV or for a new trial were denied. It now appeals.

## II. STANDARD OF REVIEW

In reviewing the trial court's denial of the VFW's JNOV motion, we review the record to see whether plaintiff made a submissible case. A case "may not be submitted 'unless each and every fact essential to liability is predicated upon legal and substantial evidence.'" *Washington by Washington v. Barnes Hosp.*, 897 S.W.2d 611, 615 (Mo. banc 1995), *quoting, Houghton v. Atchison, Topeka and Santa Fe R.R. Co.*, 446 S.W.2d 406, 409 (Mo. banc 1969). In determining whether the evidence was sufficient to support the jury's verdict, we view the evidence in the light most favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences which conflict with that verdict. *Id.; Resnik v. Blue Cross and Blue Shield*, 912 S.W.2d 567, 570 (Mo.App.1995); *Koehler v. Burlington Northern, Inc.*, 573 S.W.2d 938 (Mo.App.1978). If the record contains probative facts which support the conclusion reached by the jury, we will affirm. *Perkins v. Rantz*, 631 S.W.2d 907 (Mo. App.1982).

## III. THE EVIDENCE SUPPORTED SUBMISSION OF A WHISTLEBLOWING THEORY

The VFW first argues on appeal that Ms. Brenneke failed to state a claim on which relief could be granted on a whistleblower theory and failed to make a submissible case on that theory. In support, the VFW notes that in Missouri, employees such as Ms. Brenneke, who have no contract for a certain term of employment, are employees-at-will. An employee-at-will normally has no right to sue for wrongful discharge even if the employee was terminated without cause. *See Dake v. Tuell*, 687 S.W.2d 191 (Mo. banc 1985); *Hanrahan v. Nashua Corp.*, 752 S.W.2d 878, 883–84 (Mo.App.1988).

The VFW acknowledges that there are exceptional circumstances in which the Missouri courts have held that public policy requires that an employee-at-will be entitled to sue for wrongful discharge. The VFW notes,

however, that the only one of these exceptions which the Missouri Supreme Court has expressly adopted is the public policy exception for retaliatory discharge of a person for exercising his or her workers' compensation rights. *See, e.g., Crabtree v. Bugby*, 967 S.W.2d 66 (Mo. banc 1998).[2]

This Court and the other districts of the Court of Appeals have recognized three additional public policy exceptions to the employment-at-will doctrine, however, in cases such as *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859 (Mo.App.1985). *Boyle* has been followed in many other cases, *see, e.g., Porter v. Reardon Mach. Co.*, 962 S.W.2d 932 (Mo.App. 1998); *Adolphsen v. Hallmark Cards, Inc.*, 907 S.W.2d 333 (Mo.App.1995); *Clark v. Beverly Enters.-Missouri, Inc.*, 872 S.W.2d 522 (Mo.App.1994), and we follow it here in the absence of a Missouri Supreme Court decision to the contrary.

*Boyle* and similar cases have held that a cause of action for wrongful discharge will arise if an employee is discharged for: (1) refusing to perform an illegal act or an act contrary to a strong mandate of public policy; (2) reporting wrongdoing or violations of law or public policy by the employer or fellow employees to superiors or third parties; (3) acting in a manner public policy would encourage, such as performing jury duty, seeking public office, or joining a labor union; or (4) filing a workers' compensation claim. *Porter*, 962 S.W.2d at 936–3; *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d at 873–75.

Here, Ms. Brenneke alleged that her firing violated the second of these public policy exceptions to the employee-at-will doctrine. That exception, commonly referred to as the "whistleblower" exception, was first recognized in *Boyle*. *Boyle* found that when an employer has discharged an at-will employee "because the employee reported to his superiors or to public authorities serious misconduct that constitutes violations of the law and of such well established and clearly mandated public policy, *the employee has a cause of*

*action in tort for damages* for wrongful discharge." 700 S.W.2d at 878 (emphasis added). Other Missouri cases have applied the whistleblower exception where they have found that either Missouri statutes or strong mandates of public policy that encourage employees to report wrongdoing may have been violated by the at-will employee's dismissal. *See, e.g., Porter*, 962 S.W.2d 932; *Clark*, 872 S.W.2d 522.

The VFW asserts that, assuming Missouri recognizes a whistleblower theory, Ms. Brenneke has failed to make a submissible case under that theory for three reasons. It asserts first, that where, as here, the alleged wrongdoing consists of simple acts of theft of the VFW's own property, committed by a member of that same organization, it is not a sufficiently serious wrong to invoke this public policy exception. Second, it asserts that, because Ms. Brenneke reported Mr. Bryant's alleged wrongdoing only to her superiors, rather than to outside authorities, such as the police, she failed to actually "blow the whistle" at all. Third, it asserts that Ms. Brenneke did not prove that her discharge was directly and exclusively caused by the whistleblowing, and that such an exclusive causal connection is required by Missouri law. We address each contention in turn.

## A. Reporting of Internal Theft From the Company Constitutes Whistleblowing.

■ The VFW argues there "is not one Missouri case that supports the theory that Respondent can make a case for the *type* of whistle blowing [sic] she claims: simple acts of theft of the association's own property committed by a member of the association." This is incorrect. As we said in our recent decision in *Faust v. Ryder Commercial Leasing & Serv.*, 954 S.W.2d 383 (Mo.App.1997), public policy encourages employees to come forward and report criminal activity by co-employees. Citing our Supreme Court's decision in *Sanders v. Daniel Intern. Corp.*, 682 S.W.2d 803, 806 (Mo.1984), *Faust* noted there is almost universal agreement that sound

**2.** Although the Missouri Supreme Court has not specifically adopted all of the public policy exceptions to the employment at-will doctrine, it acknowledged that various Court of Appeals decisions had recognized other public policy exceptions in *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661 (Mo. banc 1988), and *Luethans v. Washington Univ.*, 894 S.W.2d 169, 171 n. 2 (Mo. banc 1995).

public policy dictates that the law should encourage the uncovering and prosecution of crime, and that " '[a]ny 'policy that discourages citizens from reporting crime or aiding in prosecution would be undesirable and detrimental to society in general.' " 954 S.W.2d at 390–91 (citations omitted). *Faust* expressly recognized that Missouri public policy does extend to protecting an employee who is fired for reporting suspected criminal activity at his or her job to the proper authorities. *Id.* at 391. We find that it is a strong mandate of Missouri public policy to prevent theft of charitable donations to and funds of a non-profit organization such as the VFW.

**B.   A Report of Wrongdoing To Proper Internal Or External Authorities Constitutes Whistleblowing.**

■ In its second argument, the VFW states that Ms. Brenneke's actions in telling three officers at the VFW about the alleged stealing did not constitute whistleblowing because she only reported the alleged theft to her superiors, rather than to the police or other outside authorities, and that such "internal" reporting does not really "blow the whistle" on the alleged wrongdoer in any meaningful sense. In support, the VFW again cites to *Faust*. *Faust* did hold that the plaintiff in that case had not really "blown the whistle." It so held not because the plaintiff had failed to report the wrongdoing to outside authorities, however, but because the plaintiff had not reported the wrongdoing to *any* authority; he had spoken only to the wrongdoer himself. Far from holding that reporting to internal rather than external authorities does not constitute whistleblowing, *Faust* noted that under *Boyle* the whistleblower exception protects employees that appropriately report to *superiors or other proper authorities*. It explicitly recognizes that an employee's superiors can constitute the proper authority to whom to blow the whistle, and that an employee who is fired for informing his superiors of wrongdoing by other employees is entitled to bring suit. *Faust* at 390–91. See also, *Boyle*, 700 S.W.2d at 878; *Lynch v. Blanke Baer & Bowey Krimko, Inc.*, 901 S.W.2d 147, 150–51 (Mo.App.1995) (court stressed that a plaintiff need not report or threaten to report his concerns to outside authorities). We reaffirmed *Faust's* recognition of internal whistleblowing in *Porter*, 962 S.W.2d 932. *Porter* specifically held that a plaintiff's reports *to his supervisor* that wrongdoing occurred were, indeed, adequate to meet the whistleblowing requirement. There was no requirement that the reports be made to outside, as opposed to internal, authorities. *Id.*

■ The VFW further places emphasis on the fact that Mr. Bryant allegedly did not know about the "whistleblowing" reports when Ms. Brenneke was fired. First, while there was no direct evidence of his knowledge of these reports, there was circumstantial evidence from which the jury could have inferred that he had learned of Ms. Brenneke's allegations. There was also evidence that the decision to fire Ms. Brenneke was made by a council of administrators. Although the VFW presented evidence that there was a lack of knowledge about the whistleblowing by some members of the council, Ms. Brenneke testified that she talked to three officers at the VFW about the stealing, including Jim Mueller, Dennis Flynn and Ron Wooderson. These three officers all served on the council which made the decision to fire Ms. Brenneke. Therefore, the jury could reasonably infer from Ms. Brenneke's testimony that at least some of those who made the decision to terminate her employment knew of the whistleblowing.

*C.   Whistleblowing As the Exclusive Cause of Firing.*

Lastly, the VFW asserts that Ms. Brenneke failed to prove that her firing was directly and exclusively caused by her acts of whistleblowing. As the VFW correctly notes, *Faust* and a number of other Missouri Court of Appeals decisions do state that whistleblowing must be the exclusive cause of firing if it is to form the basis of a cause of action for wrongful termination. *See, e.g., Bell v. Dynamite Foods*, 969 S.W.2d 847 (Mo.App.1998); *Lynch*, 901 S.W.2d at 147, 150; *Loomstein v. Medicare Pharmacies, Inc.*, 750 S.W.2d 106, 113 (Mo.App.1988). Although many of these cases cite to the adoption of this public policy exception in *Boyle* to support the requirement of proof of exclusive causation, such proof was not required by

*Boyle.* The latter utilized a direct, rather than an exclusive, causation analysis in stating that a person can maintain an action for wrongful discharge under the public policy exception by establishing that the "employer discharged the employee ... *because* the employee reported to his superiors or to public authorities serious misconduct." *Boyle,* 700 S.W.2d at 878 (emphasis added).

It appears that cases decided after *Boyle* borrowed the exclusive causation requirement from Missouri Supreme Court cases interpreting *statutory actions* for retaliatory discharge due to filing a workers' compensation claim. Those cases require proof of exclusive causation. *See, e.g., Crabtree v. Bugby,* 967 S.W.2d 66 (Mo. banc 1998); *Davis v. Richmond Special Road District,* 649 S.W.2d 252 (Mo.App.1983); *Mitchell v. St. Louis County,* 575 S.W.2d 813 (Mo.App. 1978); *Hansome v. Northwestern Cooperage,* 679 S.W.2d 273 (Mo. banc 1984).[3]

There is a key distinction between whistleblower cases and workers' compensation retaliatory discharge cases. While workers' compensation claims are statutory, the whistleblower exception to the employee-at-will doctrine arises under the common law of torts. In part for this reason, some of the other jurisdictions which, like Missouri, treat these public policy claims as arising in tort, do not require proof of exclusive causation, but rather require the employee to prove by

a preponderance of the evidence that the discharge was for an impermissible reason.[4]

We need not resolve in this case whether the Missouri Supreme Court would apply the general tort standard of proof of causation, or the workers' compensation statute standard of proof requiring exclusive causation, to a whistleblower claim, however. Assuming that the instruction below was erroneous in failing to require the jury to find that Ms. Brenneke's reporting of her boss' wrongdoing was the exclusive cause of her firing, the VFW has failed to preserve this issue for review. The verdict director in this case stated:

> Your verdict must be for defendant unless you believe:
>
> First, plaintiff reported violations of law to her superiors, and
>
> Second, defendant knew that plaintiff reported violations of law, and
>
> Third, defendant discharged plaintiff *because* plaintiff reported violations of law, and
>
> Fourth, plaintiff was thereby damaged.

(emphasis added). As had the instruction in *Boyle,* this instruction required only proof that plaintiff was discharged *because* plaintiff reported violations of law; it did not require the jury to find exclusive causation. Defense counsel made no objection to the above instruction on this or any other basis, however. Defendant also failed to raise an objection to

**3.** Missouri statutes make such firing the basis for suit, stating: "No employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer." § 287.780, RSMo 1994.

**4.** *See, e.g., Winkelman v. Beloit Mem. Hosp.,* 168 Wis.2d 12, 483 N.W.2d 211 (Wis.1992); *Phipps v. Clark Oil & Ref. Corp.,* 408 N.W.2d 569 (Minn. 1987) (to prevail, employee must prove by a preponderance of the evidence that the discharge was for the impermissible reason); *Melchi v. Burns Int'l,* 597 F.Supp. 575 (E.D.Mich.1984); *Freed v. Manchester,* 165 Cal.App.2d 186, 331 P.2d 689 (Cal.App.1958); *Smith v. Citizens and Southern National Bank of S.C.,* 241 S.C. 285, 128 S.E.2d 112 (S.C.1962); *Special Event Entertainment v. Rockefeller Center, Inc.,* 458 F.Supp. 72 (S.D.N.Y.1978); *Jamison v. Rockaway,* 242 N.J.Super. 436, 577 A.2d 177 (N.J.Super.1990).

Federal whistleblower legislation similarly requires the plaintiff to prove a general nexus between the retaliation and the employee's action. If there are independent, legitimate reasons for the disciplinary action, the burden is on the employer to prove that it would have disciplined the employee even if he or she had not engaged in the protected activity. *See, Pogue v. U.S. Dept. of Labor,* 940 F.2d 1287 (9th Cir.1991). Other courts have used the approach used in employment discrimination cases, and determine whether the alternative grounds for firing claimed by the employer are merely a pretext, or whether there is a mixed motive. In such cases, the employee must normally prove that the disclosure was the substantial motivating factor in the discharge. *See, e.g., Baldwin v. Sisters of Providence in Washington,* 112 Wash.2d 127, 769 P.2d 298 (Wash.1989); *Ward v. Industrial Commission,* 699 P.2d 960 (Colo.1985); 82 Am.Jur2d, Wrongful Discharge, § 236.

the instruction on this basis in its motion for new trial. Rule 70.03 states that "[c]ounsel shall make specific objections to instructions considered erroneous." Numerous cases have held that the failure to specifically object to a jury instruction either at trial or in a motion for new trial preserves nothing for review. *Computer Sales Intern., Inc. v. Family Guardian Life Ins. Co.*, 860 S.W.2d 826 (Mo.App.1993); *Hall v. Missouri Highway and Transp. Com'n*, 861 S.W.2d 720 (Mo.App.1993); *Metro Waste Systems, Inc. v. A.L.D. Services, Inc.*, 924 S.W.2d 335 (Mo. App.1996). Thus, only review for plain error under Rule 84.13(c) remains. We cannot say that a submission based on proof that the injury occurred *because* of the whistleblowing amounted to manifest injustice, given the use of that standard in other jurisdictions and its use in Missouri in other tort cases.

Moreover, we find that the evidence was sufficient to have supported a jury finding of exclusive causation, if that issue had been submitted. Counsel's argument to the contrary ignore's Ms. Brenneke's testimony. The credibility of her testimony was for the jury to determine, however. Accordingly, we find that a submissible case was made and that the failure of the instruction to require proof of exclusive causation does not require remand for a new trial.

## IV. FUTURE DAMAGES

### A. Whether Future Damages were Speculative.

■ The VFW argues that Ms. Brenneke's claim for future damages was not submissible because her testimony on future damages was too speculative. In support, it cites to numerous cases stating the basic standard for recovery of future damages in a tort case, which is basically that damages need not be established with absolute certainty, but must be established with reasonable certainty, *see, e.g., Anderson v. Burlington Northern R.Co.*, 700 S.W.2d 469, 477 (Mo.App.1985); *Affiliated Acceptance Corp. v. Boggs*, 917 S.W.2d 652 (Mo.App.1996), and argues that this standard was not met here.

■ The VFW also argues that Ms. Brenneke failed to make a case because she failed to offer expert testimony as to her future wage loss. In support, the VFW cites us to cases in which experts have testified to future wage loss. None of the cited cases states that expert testimony is required where the plaintiff herself testifies to her past and future employment and wage loss, however, and we do not think that is the law. Whether or not an expert is required depends on the nature and the subject of the testimony given. For instance, in a medical malpractice case an expert witness is normally required to establish the standard of care and the future prognosis for recovery and for future employment. *See Morrison v. St. Luke's Health Corp.*, 929 S.W.2d 898 (Mo. App.1996); *McKersie v. Barnes Hosp.*, 912 S.W.2d 562 (Mo.App.1995). However, if the matter is within the comprehension of the jury, then an expert is not required in order to make a submissible case. *Peterson v. Summit Fitness, Inc.*, 920 S.W.2d 928 (Mo. App.1996). This is the rationale that Ms. Brenneke says applies here. She was testifying about her own past wage loss and future employment prospects; these were matters about which she clearly showed she had a basis for knowledge. She explained to the jury what her salary and benefits had been at the VFW and the VFW's pattern of giving five percent raises each year. She testified as to the date she had been terminated, as to her efforts to find work since that time, as to the hours of work and the salary she had earned at each place she had worked, as to her qualifications and as to her future prospects for employment. She further testified that her ability to find work at the same salary she had earned at the VFW had been compromised by the fact that the VFW had given bad references to prospective employers. She subtracted what she had earned since her discharge from what she would have earned at her salary at the VFW had she not been fired, and requested past lost wages of $64,606. She testified that, if she continued to earn only minimum wage over the next five years, she would lose approximately an additional $130,000 in income, but that she believed that she would eventually be successful in obtaining higher paying work and she asked for a total of past and future damages of only $100,000. This was equivalent to her claim for past lost

wages plus two years of future reduced wages. That is the amount awarded by the jury.

While this testimony was not exact, as we noted in *Franklin v. Byers,* 706 S.W.2d 230, 231–32 (Mo.App.1986), Missouri courts do not require as strict a level of proof of future lost wages as they do of lost profits. "The rationale for the different treatment lies in the fact that profits are more speculative and arise from elements other than the personal services of the owner." *Id.* at 232. *Franklin* affirmed a verdict for the insurance salesman in that case for loss of commissions based on the salesman's testimony and admission of evidence of lost commissions. No expert testimony was required. *Id.* Many other cases also approve awards of lost wages without requiring expert testimony, or specific evidences as to the exact amount of future loses. *See, e.g., Hopkins v. Tip Top Plumbing & Heating Co.,* 805 S.W.2d 280, 286 (Mo.App.1991) (plumber could recover difference in what he earned and what he would have earned absent injury); *Arie v. Intertherm, Inc.,* 648 S.W.2d 142, 156 (Mo.App.1983) (plaintiff made submissible case of lost wages due to termination for exercise of workers compensation rights where she testified to what she had been earning before the discharge and what she earned after the discharge). As noted in *Anderson,* cited by the VFW, "Inevitably there is a degree of speculation to the determination of a fairly approximated present-value award compensating plaintiff for what he would have earned but for his injury, but we do not find such speculation, when based upon the use of facts in reasonable calculations, to be so purely conjectural as to improperly influence the jury's verdict on damages .... the relative weakness or strength of the factual underpinning of the expert's opinion goes to the weight and credibility, rather than admissibility." 700 S.W.2d at 477.[5]

We think that Ms. Brenneke's testimony was adequate to submit her claim for wage loss to the jury. Of course, defendant was free to attack the grounds on which she claimed this wage loss, and did so through extensive cross-examination. We think that any deficiencies in her testimony go to its weight, not its admissibility, however.

### B. Jury Instructions and Argument.

The VFW also complains that the trial court allowed Ms. Brenneke to argue for future damages even though the jury instructions did not permit recovery of future damages. The record does show that, during the jury instruction conference, counsel for Ms. Brenneke offered MAI 4.01 with the clause containing a reference to future damages included. The offered version of MAI 4.01 stated:

> If you find the issues in favor of the plaintiff, then you must award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for any damages you believe she sustained *and is reasonably certain to sustain in the future* as a direct result of her being discharged from employment by defendant.

(emphasis added). Counsel for the VFW objected to using that instruction because it contained the future damages clause. The trial court ruled:

> It is the Court's position that as a matter of law, that damages [Ms. Brenneke] might be reasonably certain to sustain in the future are not appropriate and this phrase should not be included in the instruction.

The Court thus instructed the jury as follows regarding damages:

> If you find in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe she sustained as a direct result of her being

**5.** Other states also hold that in wrongful termination suits such as this one, the plaintiff is not required to prove the exact amount of future lost wages, but only the facts from which the jury can determine the proper amount, by, for instance, presenting testimony as to what the plaintiff earned at his or her previous job, and what the plaintiff currently earns or is reasonably expected to earn, is enough for the issue of future lost earnings to go the jury so that the jury can compute what it believes is a reasonable amount of damages. *See, e.g., Remington Freight Lines, Inc. v. Larkey,* 644 N.E.2d 931, 942 (Ind.App. 1994); *Southwestern Elec. Power Co. v. Martin,* 844 S.W.2d 229, 234–35 (Tex.App.1992); *McIver v. Gloria,* 140 Tex. 566, 169 S.W.2d 710 (Tex. 1943).

discharged from employment by defendant.

Despite the court's ruling and its deletion of the future damages clause from MAI 4.01, the court then stated it would permit plaintiff's counsel to argue future damages to the jury because it believed that the broad language of MAI 4.01, stating that plaintiff may be compensated for "any damages you believe she sustained," arguably permitted the award of future damages even with the future damages clause deleted. He thought this justified the argument for such damages, but that based on the evidence he did not want to use the future damage clause because, "It's just that I don't think they [future damages] need to be highlighted in the instruction to that degree ... "

Ms. Brenneke's counsel did in fact ask the jury to award future damages during closing argument. He said that past damages were $64,606, and asked for a total award of $100,-000 for past and future damages. This is the amount awarded by the jury.

On appeal, the VFW argues that, as the court took the future damages clause out of MAI 4.01 because the court did not believe that the law permitted plaintiff to recover future damages, it was inconsistent and improper for the court to permit plaintiff's counsel to argue such damages just because the court believed the remaining portions of MAI 4.01 could be interpreted to permit the award of future damages.

■ We agree with the VFW that the trial court erred in allowing plaintiff's counsel to argue for future damages when the future damage clause was not included in MAI 4.01. If future damages were not supported by the record, then they should neither have been instructed on nor argued; if they were supported by the record, then they should have been both instructed on and argued. In fact, the court so held in a strikingly similar circumstance in *Kennedy v. Tallent*, 492 S.W.2d 33, 39 (Mo.App.1973). In *Kennedy*, as here, the court permitted plaintiff to argue future damages, over objection, even though the future damages clause was excluded from MAI 4.01. The appellate court found this to be error, stating "it is likewise error to permit an argument as to future damages to be

made if it not only lacks evidentiary support but is not submitted in an appropriate instruction on damages." *Id.* at 39. *Kennedy* also held that any error in permitting these damages to be argued without a future damages instruction does not automatically require reversal, however. *Kennedy* itself affirmed the verdict for plaintiff, stating that before such an error requires a new trial, the court must find the error to be prejudicial. *Kennedy* found no prejudice in the case before it, because the $500 verdict was within the damage range supported by the other evidence of damages offered by plaintiff. *Id.*

■ We also find that, while the trial court erred in allowing future damages to be argued in the absence of an instruction, that error does not require reversal. Here, unlike in *Kennedy*, we have found that the evidence did support the submission of future lost wages. Indeed, it appears that the trial judge also believed that the record supported such damages, he just believed that the evidence of them was weak. Thus, while he at one point stated that as a matter of law future damages should not be awarded, he later clarified that he felt that MAI 4.01 emphasized future damages too much and that he preferred to give MAI 4.01 without that clause so that future damages would not be highlighted.

■ While we agree with the trial court that Ms. Brenneke's case for future damages was not strong, we do not agree that the proper response to this situation was to allow argument of future damages but not to explicitly instruct on them. Where an MAI is applicable, and where, as here, it does not violate the substantive law, and there is evidence to support it, the trial court should not modify it to comport with what the court believes to be a better instruction. *Haynam v. Laclede Elec. Co-op., Inc.*, 889 S.W.2d 148 (Mo.App.1994). The court should have given the instruction with the future damages clause included and then left it to defense counsel to argue that future damages were not merited on the evidence presented.

The court's failure to instruct the jury it could award future lost wages benefitted defendant, not plaintiff, however. In closing

argument, defense counsel used this to his advantage, pointing out that the court was not instructing on future wage loss, that there was nothing in the instruction about such damages because plaintiff did not deserve them, and that she could be employed better if she had tried. In this circumstance, we cannot say that the trial court's error prejudiced defendant.

## V. EVIDENTIARY ERRORS

The VFW also complains of certain evidentiary errors. In particular, it complains that the trial court erred: (1) in permitting Gene Fee to testify to his hearsay belief that three VFW personnel had knowledge that Ms. Brenneke had blown the whistle; and (2) in permitting plaintiff to read the hearsay affidavit of Jim Mueller to the jury during opening statement.

### A. · Admission of Testimony of Gene Fee as to VFW's Knowledge of Wrongdoing.

■ Mr. Fee was asked whether he had talked with two officers of the VFW who had knowledge of the reports made by Ms. Brenneke about her boss, Mr. Bryant. Counsel for the VFW objected that this called for hearsay as to what Mr. Fee had been told by others. Counsel for Ms. Brenneke responded that, since Mr. Fee was counsel for the VFW at the time and since he was one of those who had voted to terminate her, what he had been told by other officers of the VFW was relevant to show the VFW's knowledge of her whistleblowing at the time she was terminated. The court overruled the objection.

Mr. Fee then testified that he understood that Ms. Brenneke had actually spoken to three VFW officers—Mr. Mueller, Mr. Wooderson and Mr. Flynn. He said, however, that he had not talked directly with any of those officers to ask them what her complaints were about Mr. Bryant because "he had made a conscious decision not to talk to them because they had not come to" him with the information. Counsel for the VFW did not renew his objection to Mr. Fee's testimony once it thus became evident that Mr. Fee's knowledge that Ms. Brenneke had talked to these three officers was based on

hearsay. Even had counsel done so, it appears that the testimony was relevant for the limited purpose of showing that Mr. Fee had learned of Ms. Brenneke's allegations while he was counsel for the VFW, yet had purposely decided not to follow up on them or to conduct any investigation as to their validity. As Ms. Brenneke notes, this failure to investigate supported Ms. Brenneke's claim that the VFW tried to cover up Mr. Bryant's wrongdoing, and that her termination was part of the cover-up. The evidence was admissible for this limited purpose. Accordingly, we reject this claim of error.

### B. Admission of Mueller Affidavit Admitting Knowledge of Brenneke Allegations.

■ The VFW also claims it was reversible error to allow "respondent's counsel to read to the jury during opening statement the affidavit of Jim Mueller because the contents of the affidavit were inadmissible." In that affidavit, which was actually read at the start of the evidence, following opening argument, Mr. Mueller admitted that Ms. Brenneke had informed him of her belief that Mr. Bryant was stealing, stating in relevant part:

> I spoke with Evelyn Brenneke by telephone one time prior to her firing and she made allegations of financial impropriety against Wayne Bryant.

> I never made these allegations from either Evelyn Brenneke or Linda Meckfessel known to either Wayne Bryant or Wayne Bryant's secretary, Chris Ordway.

■ The trial court admitted the affidavit because it believed that it constituted an admission of the VFW, since Mr. Mueller was an officer of the VFW at the time Ms. Brenneke was terminated and the affidavit concerned his knowledge at that time. We agree with VFW that, in so ruling, the trial court erred. In determining whether the affidavit could be admitted as an admission of the VFW, the relevant issue was not whether he was a VFW officer at the time of the events discussed in the affidavit, but rather whether he was a VFW officer at the time he made the admissions when he signed the affidavit. Generally, "an admission or declaration of an agent or employee binds the

principal only when made during the continuance of the relationship and in regard to the transaction pending." *Winegar v. Chicago,* 163 S.W.2d 357, 367 (Mo.App.1942). *See also, Penberthy v. Nancy Transp. Inc.,* 804 S.W.2d 404, 408 (Mo.App.1991) (when an individual was no longer employed with a company at the time his deposition was taken, his statements cannot be admissions against interest).

The principles underlying Rule 57.07(a)(2) also support this result. That rule says that "the deposition of a party, or of anyone *who at the time of taking the deposition* was an officer, director or managing agent or a person designated under Rule 57.03(b)(4) ... to testify on behalf of a public or private corporation ... may be used by an adverse party for any purpose." While Mr. Mueller was an officer of the VFW at the time Ms. Brenneke was fired, he was not an officer, director or managing agent of the VFW at the time his affidavit was prepared. He therefore could not have bound the company by deposition testimony given at that time. His affidavit should be given no greater weight than would a deposition. For this reason, we hold that, at the time it was made, Mr. Mueller's affidavit was not an admission of a party and thus was not admissible on that basis.

While the statements in Mr. Mueller's affidavit were not admissions of the VFW, we nonetheless find no reversible error in admission of the affidavit. It is well-settled that:

[A]n objection to the admission of evidence is waived where the same or similar evidence has been elicited or introduced by the objector. Thus, a party cannot object to the admission of certain evidence and then use the same evidence to its advantage.

*Vermillion v. Burlington Northern R.R. Co.,* 813 S.W.2d 947, 950 (Mo.App.1991). Ms. Brenneke basically argues that this principle applies here because the VFW had Mr. Mueller prepare his affidavit so that it could use it to support its motion for summary judgment, and the VFW in fact did use the affidavit for that purpose. Specifically, the VFW's motion stated:

The attached Affidavits, labeled Exhibit A and incorporated herein by reference, are from the VFW personnel that Plaintiffs claim were contacted by them and then told that Wayne Bryant was guilty of financial improprieties. The Affidavits prove either: 1) Plaintiffs did not make contact with VFW personnel until *after* they were fired or, 2) even if contact was made prior to termination, the contact was never made known to Wayne Bryant.

Exhibit A contained six affidavits, one of which was prepared by Mr. Mueller. Of the other five affidavits, one said that Ms. Brenneke had never contacted him about Wayne Bryant prior to the time she was fired, and a second said she had not mentioned these allegations even after she was fired. The affidavits of Chris Ordway and Dennis Flynn said Ms. Brenneke had alluded to claims of financial impropriety but was never specific and both denied repeating the claims to Mr. Bryant. Mr. Rivers said that Linda Meckfessel had made such allegations to him but he had not passed them on to Mr. Bryant.

We then come to Mr. Mueller's affidavit. Much like Mr. Rivers, Mr. Mueller said Ms. Brenneke had told him she thought Mr. Bryant had been stealing, but he had not told Mr. Bryant about her allegations. The VFW sought to use Mr. Bryant's affidavit to support its argument that, since there was no evidence that Mr. Bryant had been told about Ms. Brenneke's allegations, he could not have fired her for them. The VFW thus specifically obtained and relied on the affidavit and affirmatively used it to support its motion for summary judgment.

Ms. Brenneke argues that, by obtaining and relying on the affidavit, the VFW adopted it as its own and cannot now object to its admission. The VFW argues that this is not the case, and cites authority that an affidavit filed in support of summary judgment is of no effect in a subsequent trial. The cases it cites involve an attempt by the party *offering* the affidavit to utilize it again at trial in lieu of live testimony, however.[6]

---

6. The VFW cites both *Eames v. Eames,* 463 S.W.2d 576 (Mo.App.1971) (without stipulation of the parties, affidavits offered by the plaintiff in pre-trial motion could not later be used by the

Here, it is the party against whom the affidavit was filed who sought to use it at trial. The VFW's cases are thus not dispositive. We also note that the VFW did not indicate to the court that it had doubts about the accuracy of Mr. Mueller's statement that Ms. Brenneke had reported her allegations to him until it realized shortly before trial that Ms. Brenneke wanted to turn that fact against it. This detracts from the persuasiveness of its arguments. Nonetheless, we have found no case in which an affidavit was admitted at trial on the basis that it had previously been used by an opponent in support of summary judgment, and we would hesitate to create a new hearsay exception on this basis alone, without any guidance as to how it would apply to other situations.

▆▆ Even if it were error to admit the affidavit on this basis alone, however, we do not think it was error, or at least reversible error, in the context of the entire trial of this case. As noted earlier, the trial court granted summary judgment on the claims of handicap discrimination and retaliatory discharge. Although it denied summary judgment on the issue of discharge for whistleblowing, it did make findings of uncontroverted fact regarding the whistleblowing claim based on the record presented to it on summary judgment. Among other matters, it found:

> no substantial controversy exists that: ...
>
> *4. Prior to their respective terminations, Plaintiffs reported alleged improper financial transactions by Defendant Bryant involving funds of Defendant VFW to individuals other than Defendant Bryant.*

(emphasis added). Rule 74.04(d) specifically provides that a court may make such findings of undisputed facts where, as here, a case is not fully adjudicated on a motion for summary judgment. Where such findings are made, "upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly." Rule 74.04(d).

Thus, at trial it was, or should have been, deemed established that plaintiff had reported to others allegations of improper financial transactions by Mr. Bryant involving VFW funds. Moreover, as also discussed earlier, Gene Fee had testified that he understood that Mr. Mueller knew of the allegations about Mr. Bryant's alleged financial irregularities. Additionally, Ms. Brenneke and her co-plaintiff, Ms. Meckfessel, testified that they had told Mr. Mueller about their suspicions of Mr. Bryant.

Finally, the VFW actually affirmatively used the Mueller affidavit in cross-examination of Ms. Meckfessel. In her testimony, Ms. Meckfessel testified that she had told Mr. Mueller about Mr. Bryant's misconduct on multiple occasions. In order to attack her credibility on this issue, defense counsel showed her the Mueller affidavit and showed her where Mr. Mueller said that he had been told about the allegations only once and that was after Ms. Meckfessel had been terminated. Counsel then said to Ms. Meckfessel that the affidavit:

Q: ... doesn't say [you told him] before [you were fired], does it?

A: That's not right.

Q: So he's lying?

A: Yes, he is.

Q: Jim Mueller's a big liar?

A: He didn't even stand up for the veterans. Do you think he's gonna stand up for them now? I called him many times ...

Q: Is he lying in his affidavit?

A: Yes.

Defense counsel then said that the other people whom Ms. Meckfessel claimed she had told about Mr. Bryant's misconduct were going to take the stand and deny that she had done so, and he then asked:

Q: And if that happens they're gonna be liars too, I guess?

A: Yes, they are.

In other words, defense counsel used the affidavit to cast doubt on Ms. Meckfessel's version of the facts. He also used it to show that Mr. Mueller denied her allegations, just

plaintiff in place of actual testimony), and *D.K.L. by K.L. v. H.P.M.*, 763 S.W.2d 212 (Mo.App.1988) (plaintiff's request for admission treated as affidavit and plaintiff could not offer it to prove fact of the matter asserted absent a foundation upon which to base its admission).

as counsel later impeached Ms. Meckfessel through the live testimony of other persons to whom Ms. Meckfessel alleged she had spoken to about Mr. Bryant prior to her firing. The VFW thus used the affidavit to further its case. As we noted earlier, an objection to the admission of evidence is waived where the same or similar evidence has been elicited by the objector, because a party cannot object to the admission of certain evidence and then use the same evidence to its advantage. *Vermillion v. Burlington Northern RR. Co.*, 813 S.W.2d at 950.

In sum, while the VFW objected to admission of the affidavit, it affirmatively used it to attack Ms. Meckfessel's credibility and to rebut her claims that she had reported Mr. Bryant's misconduct to Mr. Mueller on multiple occasions before she was fired; it had relied on the affidavit in support of summary judgment; the court found as an undisputed fact, based on this and the other affidavits offered by the VFW, that Ms. Brenneke and Ms. Meckfessel had made reports of Mr. Bryant's misconduct to others; and other witnesses at trial testified to such reports. In these circumstances, admission of the affidavit was not prejudicial error.

Judgment affirmed.