Jason SHULER, Appellant,

v.

**PREMIUM STANDARD FARMS, INC., Respondent.**

**No. WD 61518.**

Missouri Court of Appeals, Western District.

April 13, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 2004.

Application for Transfer Sustained Aug. 24, 2004.

Case Retransferred Nov. 23, 2004.

Court of Appeals Opinion Readopted Nov. 30, 2004.

Jerold L. Drake, Grant City, for appellant.

Jeffrey D. Hanslick, Julie R. Somora, Kansas City, Terry M. Evans, Smithville, for respondent.

Before SMART, P.J., ULRICH and LISA WHITE HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

This appeal arises from the trial court's directed verdict in favor of Premium Standard Farms, Inc. and against Jason Shuler on his claim of wrongful discharge. Shuler contends the court erred in refusing to instruct the jury regarding his whistleblower theory of wrongful discharge. We reverse and remand.

FACTUAL AND PROCEDURAL HISTORY

Jason Shuler was employed by Premium Standard Farms, Inc. and its predecessor company from July 25, 1994, until his discharge on March 30, 2000. Premium owns a concentrated animal feeding operation, which necessitates the disposal of large quantities of animal waste ("effluent"). State regulations allow limited quantities of the effluent to be applied to farmland as a fertilizer. At the time of his discharge, Shuler worked for Premium as a supervisor for such land applications at Homan Farms and Ruckman Farms.

Following his discharge, Shuler filed and later amended a petition in the circuit court alleging that Premium: (1) violated the Service Letter Statute, Section 290.140 R.S.Mo.2000,[1] by making false statements about the reason for his termination; and

---

1. The Service Letter Statute, § 290.140, permits a discharged employee, upon timely request, to obtain a letter from the former employer stating the true cause for the discharge. Violations of the statute may subject corporate employers to compensatory,

(2) wrongfully discharged him based on his refusal to perform unlawful acts of soil sampling. A jury trial was held, during which Shuler presented evidence of the following events surrounding his discharge.

In March 2000, Premium planned to apply effluent at Homan Farms on a field that had recently been fertilized with anhydrous ammonia. Premium's land application superintendent, Richard Snapp, instructed Shuler to obtain soil samples in preparation for the application. Such sampling is required by law in order to prevent the over application of fertilizers and subsequent pollution of the water table. On Thursday, March 23, 2000, Snapp instructed Shuler to extract the soil samples from a separate field that had not been treated with anhydrous ammonia and falsely report that the samples came from the field where the effluent was to be applied. Shuler was "dumbfounded" because these instructions violated federal and state law requirements[2] to obtain samples from the soil to be treated. Snapp's statements were made in the presence of Shuler's crew leader, Ben Musick, and other crew members. Although Shuler "didn't say anything right then" to Snapp, later that day he unsuccessfully attempted to contact Snapp's supervisor, Matt Brock. Shuler learned that Brock would be out of the office until the next week.

During the next week, Shuler's crew was scheduled to apply effluent on a field at Ruckman Farms. Premium's standard operating procedures required crews to obtain a work order from the company's Environmental and Regulatory Compli-

ance Department (ERC) before initiating any effluent application. On March 28, 2000, Shuler requested a work order for Ruckman Farms and was told by an ERC employee that the work order would be faxed to the job site the following morning. Shuler then advised his crew regarding the status of the work orders because he planned to attend a supervisors' meeting in Princeton the next morning. Shuler told the crew to begin the effluent application once they had the work order in hand from ERC and the temperature reached forty degrees.

On March 29, Shuler attended the supervisors' meeting at Premium's office in Princeton until mid-morning. He called ERC to check on the Ruckman Farms work order shortly before noon. An ERC employee advised him the work order had not been issued. Before leaving Princeton to go to the Ruckman Farms job site, Shuler "tracked down" Matt Brock to report the instructions he received from Snapp, on March 23, to falsify the soil sampling results. Shuler told Brock that Snapp's directive "was an attempt to violate the Clean Water Act and clean water laws of Missouri."

Later that afternoon, Shuler returned to Ruckman Farms and discovered his crew was applying effluent without a work order. He telephoned ERC to find out the status of the work order. An ERC employee directed the call to Brock, who inquired whether the crew was applying effluent without a work order. When Shuler responded "yes," Brock instructed him to "shut the crews down" at Ruckman Farms.

---

nominal, or punitive damages. Section 290.140.2.

**2.** In the Amended Petition, Shuler specified that his supervisor's instructions violated provisions of the Water Pollution Control Act, 33

U.S.C. § 1251 et seq; the Missouri Clean Water Act, §§ 644.006—644.150; and the hog feed operating permit requirements of C.S.R. 20–6.010.

Brock met with Shuler, Snapp, and crew leader Musick on March 30 to discuss the events of the preceding week. After the meeting, Brock terminated Shuler's employment with Premium. Brock wrote on a Disciplinary Action Form that Shuler's job performance was unsatisfactory and listed two specific reasons for his termination:

> For communicating to his personnel in a manner which led them to believe they could apply effluent without an open Work Order, in direct violation of the Land Application/ERC Standard Operating Procedures. In addition, for relaying information which proved to be unfounded, as regards directions given on the manner and method by which soil sampling should be done, in an attempt to discredit his direct supervisor.

Two weeks after the termination, Shuler requested a service letter pursuant to Section 290.140. Premium responded with a letter, dated May 11, 2000, stating the following reason for Shuler's discharge:

> Your employment was terminated on March 30, 2000, for Violation of Company Policy. This violation occurred when you allowed operation of irrigation equipment to apply effluent without an approved work order, which is in direct violation of the Land Application standard operating procedures.

Shuler testified at trial that he had never allowed his crew to apply effluent without a work order and, thus, Premium's service letter provided a false reason for his termination. Shuler believes his discharge was in retaliation for reporting Snapp's directive to unlawfully conduct soil sampling at Homan Farms. Shuler testified:

> I believe I was terminated from Premium Standard Farms because I was a whistleblower, I was actually blowing the whistle on somebody that was at-
tempting to do something wrong, and for my actions, they were going to terminate me.

Following presentation of Shuler's evidence, the trial court denied Premium's motion for directed verdict. Premium then presented testimony from Snapp, Brock, Musick, and other company employees to dispute Shuler's allegations that the service letter provided false reasons for the discharge and that he was wrongfully discharged for reporting Snapp's unlawful soil sampling directive.

At the close of all evidence, Shuler offered a jury instruction to submit the Count II wrongful discharge claim based on the evidence of his whistleblowing activity. The court refused the instruction and submitted the wrongful discharge claim based on the allegations in Shuler's petition that he was discharged for refusing to perform unlawful acts. The court also rejected Shuler's request to submit a punitive damages instruction on Count II.

The jury rendered a verdict in favor of Shuler on the Count I service letter claim and awarded $1.00 in damages. The jury deadlocked on the Count II wrongful discharge claim. The trial court declared a mistrial on Count II. Premium renewed its motion for directed verdict on the wrongful discharge claim. Shuler then moved to file a Second Amended Petition to include the whistleblower allegations, which the court had previously refused to include in the jury instruction on wrongful discharge.

Without ruling on Shuler's motion to amend, the trial court granted Premium's motion for directed verdict on Count II. The judgment provided three grounds for directing the verdict in Premium's favor on the wrongful discharge claim:

> First, plaintiff failed to offer sufficient evidence at trial to support the theory under which he pleaded his claims; Sec-

ond, plaintiff failed to present sufficient evidence at trial from which a reasonable fact-finder could conclude there was an exclusive causal connection between whatever protected activity he claims and his discharge; and Third, plaintiff failed to present sufficient evidence at trial from which a reasonable fact-finder could conclude Mr. Brock did not honestly believe at the time he made the decision to discharge plaintiff that plaintiff had communicated with his personnel in such a manner that led them to believe they could land apply effluent without a work order, which was directly contrary to defendant Premium Standard Farms, Inc.'s policies and practices, or that plaintiff had relayed information that proved to be unfounded, namely that his supervisor had directed him to misrepresent the origin of a soil sample.

Shuler appeals the judgment, contending the trial court prejudicially erred in refusing to instruct the jury regarding the whistleblower theory of wrongful discharge and the punitive damages claim. Alternatively, Shuler argues the trial court erred in granting the directed verdict on Count II, in that the evidence was sufficient to support his wrongful discharge claim. The instructional error on the wrongful discharge claim is dispositive and, thus, we need not address the remaining points.

### INSTRUCTIONAL ERROR

■ A jury instruction must be supported by substantial evidence. *First State Bank of St. Charles, Mo. v. Frankel*, 86 S.W.3d 161, 173 (Mo.App. E.D.2002). Substantial evidence is evidence which, if true, is probative of the issues and from which the jury can decide the case. *Id.* In determining whether substantial evidence exists, this court reviews the evidence and inferences in a light most favorable to the party tendering the instruction. *Holder v. Schenherr*, 55 S.W.3d 505, 507 (Mo.App. W.D.2001). We review a trial court's refusal to submit a jury instruction for an abuse of discretion. *Frankel*, 86 S.W.3d at 173. We will not reverse a judgment due to instructional error, including the refusal to give an instruction, unless the error was prejudicial. *Id.*

■ Shuler contends he made a submissible case that he was wrongfully discharged for reporting his supervisor's unlawful misconduct. He argues the trial court erred in refusing to instruct the jury regarding this whistleblower theory on Count II. Premium responds that the evidence was insufficient to support the instruction because Shuler pled his wrongful discharge claim under one theory (refusal to perform an illegal act) and then proceeded at trial under a different theory (reporting an unlawful act). Premium also argues these theories are inconsistent and preclude Shuler from proving that his protected activity was the exclusive cause of his discharge.

■ A review of the applicable law regarding wrongful discharge guides our analysis of the instructional issue. In Missouri, employees who have no contract for a certain term of employment, such as Shuler, are employees-at-will. *Brenneke v. Dep't of Mo., Veterans of Foreign Wars of U.S. of Am.*, 984 S.W.2d 134, 137 (Mo. App. W.D.1998). An employee-at-will generally has no right to sue for wrongful discharge even if the employee was terminated without cause. *Id.* However, limited public policy exceptions have been carved out for wrongful discharge claims when the employer's act of termination is in furtherance of a violation of a statute, regulation, or constitutional provision. See *Lynch v. Blanke Baer & Bowey Krimko,*

*Inc.*, 901 S.W.2d 147, 150 (Mo.App. E.D. 1995).

Under the four recognized public policy exceptions, a wrongful discharge action can be brought by an employee-at-will who is terminated for: (1) refusing to perform an illegal act; (2) reporting violations of law or public policy to superiors or public authorities; (3) participating in acts encouraged by public policy, such as jury duty, seeking public office, or joining a labor union; or (4) filing a worker's compensation claim. *Brenneke*, 984 S.W.2d at 138. In Shuler's case, the parties agree that his petition pled facts under the first exception, but he presented evidence at trial to support the second exception.

Despite Shuler's failure to plead the whistleblower exception in his Count II wrongful discharge claim, he could still proceed on that theory at trial if a submissible case was made. Pursuant to Rule 55.33(b), the pleadings conform to the issues tried by the parties. The rule states in relevant part:

> Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

Rule 55.33(b). Under the rule, evidence admitted without objection will give rise to an amendment of the pleadings by implied consent of the parties. *RPM Plumbing Mech., Inc. v. Jim Plunkett*, 46 S.W.3d 60, 63 (Mo.App. W.D.2001). The evidence must solely relate to a proposed new issue, without bearing upon other issues in the case. *Id.* New issues tried by implied consent are deemed raised by the pleadings even when the pleadings are not formally amended to conform to the evidence. *Kackley v. Burtrum*, 947 S.W.2d 461, 465 (Mo.App. S.D.1997).

Shuler testified at trial that he was discharged as a result of his "whistleblower" role in reporting his supervisor's directive to unlawfully conduct soil sampling. He presented Premium's disciplinary form, which listed Shuler's "unfounded" allegations of misconduct against his supervisor as a reason for his termination. Premium did not list that reason in its subsequent service letter, which stated only that Shuler was terminated for allowing his crew to apply effluent without a work order. The facts allowed a reasonable inference that Premium revised its termination reasons upon realizing Shuler's allegations against his supervisor could constitute protected conduct. The evidence at trial was abundantly clear that Shuler presented his wrongful discharge claim based on the whistleblower public policy exception.

Premium did not object to Shuler's evidence, even though it clearly raised an additional wrongful discharge theory not referenced in the petition. This evidence related solely to a new claim under the second public policy exception for wrongful discharge claims and went beyond his originally pled claim under the first public policy exception. Premium's failure to object to the evidence as exceeding the scope of the pleadings constituted consent for determination of the new issue thereby raised. *Kackley*, 947 S.W.2d at 465. Consent was further manifested when Premium presented witnesses to rebut the whistleblower allegations. Premium even elicited additional testimony from Shuler on this theory to bolster its defense that the "refusal to perform" allegations in his

petition were not the exclusive cause for the discharge.

The parties' consent to present evidence on the whistleblower theory resulted in automatic amendment of the wrongful discharge pleading to conform to the evidence. *MFA Livestock Ass'n, Inc. v. Shrewsbury*, 965 S.W.2d 432, 436 (Mo.App. W.D.1998). Although Premium objected to submission of the whistleblower claim *after the close of evidence* at the instructional conference, by that time the pleadings were already amended pursuant to Rule 55.33(b). Regardless of whether Shuler moved to formally amend the petition, he was entitled to submit his new claim to the jury if the evidence satisfied the requisite elements for wrongful discharge. *Kackley*, 947 S.W.2d at 465 (no formal pleading amendment necessary on issues tried by implied consent).

 Premium argues one of the required elements is proof of an exclusive causal connection between the protected activity and the discharge. *Lynch*, 901 S.W.2d at 152. Premium further contends Shuler could not establish an exclusive cause because he asserted he was terminated for both refusing to perform an unlawful act *and* reporting his supervisors' directive to perform an unlawful act. We note the Western District has questioned whether an exclusive causal connection (as opposed to a direct causal connection) is required when, as in this case, the wrongful discharge claim arises in tort, rather than as statutory action for retaliatory discharge based on a workers' compensation claim. See *Brenneke*, 984 S.W.2d 134. However, we need not resolve that question here because Shuler's proposed jury instruction assumed that proof of an exclusive causal connection was necessary to prove his wrongful discharge claim. The proposed instruction stated in relevant part:

Second, the exclusive reason for such discharge was because plaintiff:

1) refused to carry out the orders of his supervisor, Richard Snapp, to take soil samples from other fields and represent those samples as being taken from a field which was actively being farmed, for submission to the Missouri Department of Natural Resources, and

2) informed his supervisor's superior, Matthew Brock, that his supervisor, Richard Snapp, and made this order,

. . .

Premium suggests the proposed instruction identified two independent reasons for the termination and, therefore, could not support a finding of exclusive cause. We disagree. The proposed instruction described two types of protected activity that allegedly resulted in Shuler's termination. Shuler's refusal to perform the soil sampling and subsequent reporting of his supervisor's unlawful directive were sequential events indicating a course of protected conduct. To the extent the parties agree that an exclusive causal connection is required for wrongful discharge, it does not matter how many types of protected activities are alleged, so long as the causal link is established between the protected conduct and the discharge. See *Lynch*, 901 S.W.2d at 152 (plaintiff must establish an exclusive causal relationship between the discharge and the public policy violation). The apparent purpose of this element of proof is to show that the discharge resulted solely from the protected conduct as opposed to other reasons, such as job performance, that do not violate public policy. Shuler's proposed wrongful discharge instruction was proper in that it required the jury to find his termination was exclusively caused by his protected conduct.

The trial court erred in refusing the proposed instruction because it was supported by substantial evidence and cor-

rectly stated the elements of a wrongful discharge claim under the second public policy exception. The instructional error prejudiced Shuler, as his whistleblower theory of relief was never considered by the hung jury nor the court in rendering a directed verdict on Count II. The directed verdict is reversed, and the cause is remanded for a new trial on the wrongful discharge claim.[3]

All concur.

---

**3.** In light of our remand on Count II, Shuler will be entitled to present evidence in support of his request for punitive damages on the wrongful discharge claim; thus, we need not address his point challenging the court's refusal of his punitive damages instruction.